FLINT FROZEN FOODS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, A BODY CORPORATE, DEFENDANT-APPELLANT.

Argued January 28, 1952—Decided February 11, 1952.

*Mr. Raymond W. Troy* argued the cause for the appellant (*Messrs. Lum, Fairlie and Foster,* attorneys; *Mr. Vincent P. Biunno* on the brief).

*Mr. John Warren, Jr.,* argued the cause for the respondent (*Messrs. Parsons, Labrecque, Canzona and Combs,* attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J. The plaintiff owed Einhorn's, Inc., $13,461.99, evidenced by two promissory notes and secured by four warehouse receipts, two of which represented groceries in the Monmouth Cold Storage Company, a subsidiary of the plaintiff. Einhorn's insisted on proof from the plaintiff in the form of an insurance certificate that its interest in the groceries designated in the two warehouse receipts was covered by fire insurance. Failing to receive such a certificate from the plaintiff, Einhorn's on November 12, 1947, obtained on its own account from the defendant insurance company the fire insurance policy now in suit. This policy is in the

standard form prescribed by *N. J. S. A.* 17:36–5.7 and covered groceries in the Monmouth Cold Storage Company warehouse. The policy insured Einhorn's "to an amount not exceeding $10,000," but not "in any event for more than the interest of the insured." Nowhere in the policy is the plaintiff mentioned, nor does the policy show that Einhorn's interest in the property insured was solely as security for the payment of the plaintiff's two notes. On December 22, 1947, while the policy was still in effect, there was a fire that destroyed the groceries referred to in the warehouse receipts and in the policy.

Between the time of the issuance of the policy and the fire the plaintiff paid Einhorn's $3,000, and on the day of the fire an additional $5,593.88 on account of the notes. Thereafter, on January 15, 1948, the plaintiff paid Einhorn's the further sum of $5,400 and on the same day Einhorn's executed an assignment of the policy "including any loss claim" to the plaintiff "without recourse and subject to charges arising in connection with loss claim." The assigned policy, however, was not delivered to the plaintiff until January 23, 1948, the day after it paid Einhorn's the sum of $220.10, which included, among other items, reimbursement for the premium paid by Einhorn's for the policy here involved. At the same time Einhorn's also turned over to the plaintiff the two promissory notes and the four warehouse receipts. The plaintiff then surrendered the four warehouse receipts to its subsidiary, the Monmouth Cold Storage Company, which cancelled them.

Einhorn's never filed any claim under the policy against the defendant insurance company, but on August 14, 1948, the plaintiff filed a proof of loss with the defendant insurance company. The proof of loss disclosed that "Einhorn's, Inc., held as security for balance due, from Flint Frozen Foods, Inc., of $11,219.88 at the time of the fire, warehouse receipts Nos. 1642 and 1643 of Monmouth Cold Storage Co. in which Flint Frozen Foods, Inc., had an insurable interest for the value of the merchandise above the $11,219.98." The defend-

ant made an offer of settlement of $4,600 contingent on being subrogated to the security previously held by Einhorn's, but the offer was not accepted. The defendant then denied liability, whereupon the plaintiff instituted suit on the policy. The trial court sitting without a jury entered judgment for the plaintiff in the sum of $10,000 plus costs of suit. From this judgment the defendant appealed to the Appellate Division of the Superior Court and we certified the appeal on our own motion.

A policy of fire insurance is a contract the terms of which are prescribed by statute, *N. J. S. A.* 17:36–5.7. Like any contract, when its terms are clear the court must enforce the contract as it finds it, *James v. Federal Insurance Co.,* 5 *N. J.* 21, 24 (1950). Its meaning "is to be governed by its own terms without recourse to other documents unless its own language so requires," *Herbert L. Farkas Co. v. N. Y. Fire Ins. Co.,* 5 *N. J.* 604, 609 (1950). By the policy here in litigation the insurance company insured Einhorn's to the extent of its interest against loss by fire with respect to groceries which Einhorn's held as collateral security for a debt owed it by the plaintiff. The debt having been paid in full by the plaintiff, it necessarily follows that Einhorn's suffered no loss. Therefore, neither Einhorn's nor the plaintiff as its assignee can recover on the policy which expressly provides that there shall be no recovery "in any event for more than the interest of the insured." This conclusion, reached under the clear terms of the policy, is consonant with the fundamental principle of all insurance on property that the policy is a contract of indemnity. If the insured has suffered no loss with respect to the property covered by the policy, there is, of course, no liability on the policy, for there is nothing for the insurer to indemnify.

The plaintiff contends that the policy was procured by Einhorn's with the knowledge and consent and at the expense of the plaintiff and with the intention that the policy should protect the interests of both Einhorn's and the plaintiff. These contentions are without merit, for they are not sup-

ported by the facts. The premium here was actually paid by Einhorn's and the policy by its clear terms purported to insure only its interest. The plaintiff did not ask Einhorn's to obtain the policy in suit and at the time of the issuance of the policy the plaintiff was not obligated either to Einhorn's or to the defendant to pay the premium. It did not in fact reimburse Einhorn's therefor until after the fire. After a loss has occurred a person may not adopt a policy to which he is a stranger and thereby increase the liability of the insurer. In *Kupferschmidt v. Agricultural Ins. Co.*, 80 *N. J. L.* 441 (*E. & A.* 1910) it was held:

"To impose liability upon the defendant in this suit * * * would, in effect, result in requiring the court to construct from the plain terms of a contract with one party a contract with another, thus injecting into a contract between two persons a tripartite character, which its language will not support, and which can be called into existence in a court of law only by the introduction of evidence *dehors* the record; for, confessedly, unless we can read the name of the defendant in error into this contract as a party to its terms his action must fail." (p. 444.)

"Authorities may be multiplied illustrative of the general rule that evidence *dehors* the written instrument may be received to enable a court to identify the person mentioned in it in case of doubt, but it may be confidently stated that the rule was never extended so as to enable a suitor in a court of law to substitute himself for or in conjunction with the principal named in the written instrument declared upon." (p. 445.)

■■ In its zeal, moreover, to recover on the policy the plaintiff has placed itself in the untenable position of relying on and arguing inconsistent facts. At one and the same time it seeks to claim both as an assignee of Einhorn's and as an undisclosed principal whose interest was directly insured by the policy. This it cannot successfully do. While a party may plead inconsistent claims or defenses, *Rule 3:8–5(b)*, and "may argue inconsistent principles of law, he cannot be heard here to contend for two diametrically opposed sets of facts," *In re Perrone*, 5 *N. J.* 514, 527 (1950).

■ Our decision, it should be noted, does not operate to work a forfeiture of the policy. Prior to 1944 the standard

fire insurance policy in this state provided for by *R. S.* 17:36–3 contained a provision that the policy would be void if the interest of the insured were other than sole and unconditional ownership. The present standard fire insurance policy prescribed by *N. J. S. A.* 17:36–5.7 (*L.* 1944, *c.* 171, § 7) contains no such provision. A mortgagee, pledgee or other person having merely a security interest or having less than complete ownership in the property may now safely take out a fire insurance policy in his own name covering the property in which he has an interest, without his claim on the policy being defeated by the existence of other interests in the insured property. Thus in the present situation it was entirely appropriate for Einhorn's to secure the policy in question. Recovery by the plaintiff, however, is precluded by the fact that the policy did not purport to insure its interest as owners of the property destroyed and because as assignee its claim could rise no higher than that of its assignor, Einhorn's, which suffered no loss.

In these circumstances it is unnecessary for us to determine whether or not the plaintiff is precluded from recovery by its inability after the surrender and cancellation of the warehouse receipts to subrogate the defendant to the rights of Einhorn's.

The judgment appealed from is reversed and judgment will be entered in favor of the defendant.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT and BURLING—5.

*For affirmance*—None.