100 N.J. Super. 27 (1968)
241 A.2d 28
JACOB WILLIAM WOLF AND PEARL M. WOLF, PLAINTIFFS,
v.
THE HOME INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 13, 1968.
*29 Mr. Leonard Rosenstein for plaintiffs (Messrs. Sherman. Ancier & Rosenstein, attorneys).
Mr. John Methfessel for defendant (Mr. Samuel A. Gennet, attorney).
STAMLER (Joseph H.), J.S.C.
Plaintiffs sue to recover on a fire insurance policy issued by defendant. The case is before the court on cross-motions for summary judgment. If defendant is successful on its motion that will obviate the need for a trial. If plaintiffs are granted a partial summary judgment on the issues before this court, however, there still *30 remain certain other issues to be tried. These remaining issues include: (1) failure to file proof of loss (to which plaintiffs respond with waiver and estoppel)  Cf. Weil v. Pennsylvania Fire Ins. Co., 58 N.J. Super. 145 (App. Div. 1959); (2) increased hazard allegedly caused by long vacancy of the premises and failure to remove combustible debris  Cf. Asbell v. Pearl Assurance Company, Ltd., 59 N.J. Super. 324 (App. Div. 1960); and (3) generally, plaintiffs' failure to comply with the terms, conditions and requirements of the policy.
There is no dispute as to the relevant facts. On October 8, 1964, a fire occurred damaging or destroying plaintiffs' three-story frame apartment dwelling located at 80-82 Orchard Street in the City of Orange. Defendant had insured the premises for three years beginning on September 9, 1963 against fire with a limit of coverage under the policy of $25,000 (subject to an 80% co-insurance clause not here pertinent). The policy term had not yet expired on the date of the fire.
Prior thereto, on May 11, 1964 the plaintiffs had entered into an agreement with the State of New Jersey to sell the property in question together with another piece of property owned by plaintiffs which was located at 76 Orchard Street in the City of Orange. The successful negotiations, which were with the State Highway Department, were in lieu of condemnation proceedings. The sale price was $27,000 for the properties, without any allocation of this sum among the separate parcels of land or buildings. As of the date of purchase, the insured premises had already been vacated, and the State took possession of the property on July 29, 1964. The State's possession was evidenced by signs posted at the premises.
Following the fire of October 8, 1964 there was no downward revision in the original purchase price of $27,000. Plaintiffs were paid the agreed sum on March 4, 1965 and the State took title. It is alleged that the fire was reported to the defendant one day after its occurrence. Defendant *31 having refused to pay for damages resulting from the fire, plaintiffs bring this action seeking to recover $25,000, the maximum coverage under the policy.
Defendant first contends that it is not liable for any loss suffered by plaintiffs since the premises in question were unoccupied beyond a period of sixty consecutive days. The insured premises were certified by an investigator for the State Highway Department on July 27, 1964 to have been vacant since the agreement with the State some two and one-half months earlier. The building was still vacant on October 8, 1964 when the fire occurred. Defendant relies on the standard provision found in the policy required by N.J.S.A. 17:36-5.20:
"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring * * * (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; * * *"
Reference is made by defendant to Ekelchik v. American Casualty Co. of Reading, Pa., 56 N.J. Super. 171, 177 (App. Div. 1959), which supports the proposition that a policy of fire insurance is valid but suspended while the premises insured remain vacant and unoccupied beyond the specified period of sixty consecutive days.
As applied to the facts sub judice, this contention of defendant is untenable. In accordance with the above-quoted language of the policy and the statute, it is here "otherwise provided in writing" by a subsequent section of the policy that for protected property other than manufacturing, such as the insured premises, "[p]ermission is granted to be vacant or unoccupied without limit of time." "Protected Property" is defined by the policy as "that which is within five miles air line of a Fire Station and within 600 feet * * * air line of a fire hydrant or suction point * * *; otherwise the property shall be classed as Unprotected." The affidavit of plaintiff William Wolf, which stands uncontroverted, *32 states that the property in question, at the time of the fire and prior thereto, was "within five miles air line of a fire station, was within 600 feet of a fire hydrant and was never used for purposes other than residential purposes."
Defendant's principal contention is that plaintiffs did not sustain any loss which is covered under the policy of insurance. Plaintiffs insist with equal vigor that they have suffered a loss under this set of facts. The insuring provisions in the case at bar conform precisely with the language found in the first sentence of N.J.S.A. 17:36-5.19:
"Every such fire insurance policy shall insure, limited to the amounts of insurance specified therein, the named insured and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all direct loss by fire, lightning, and by removal from premises endangered by the perils insured against in such policy, except as thereinafter provided, to the property described therein while located or contained as described in such policy, or pro rata for 5 days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in such policy, but not elsewhere." (Emphasis added).
There can be no dispute that an insured must sustain a loss before he can recover on a standard form fire insurance policy. The question before this court is: precisely when does one measure or ascertain whether a fire loss has occurred? What is the "time of loss" referred to in N.J.S.A. 17:36-5.19? Does the "loss" become fixed as of the date of the fire so that, as long as the insured has an insurable interest at that time, the insurer becomes obligated to pay under its policy; or can subsequent collateral events, such as the fact that the sale between insureds and the State of New Jersey was ultimately consummated nearly five months after the fire, with insureds receiving the full previously agreed *33 upon contract price, be taken into account in determining the existence of an insurable "loss"?
This is a controversy which "has been raging in Anglo-American law since 1801." Cribbet, "Insurance and the Executory Contract for the Sale of Real Estate," 51 Ill. Bar J. 124 (1962). As noted in First National Bank of Highland Park v. Boston Ins. Co., 17 Ill.2d 147, 150, 160 N.E.2d 802, 804 (Sup. Ct. 1959):
"The problem that the case presents is not an easy one. When insured property is in a single ownership, it is not hard to hold to the orthodox concept of an insurance contract as a personal contract of indemnity. But there are inherent difficulties when there are multiple interests in the property. Those inherent difficulties are augmented because the effect given to an executory contract to sell realty, and to the doctrine of equitable conversion, differs significantly from one jurisdiction to another. The result is that neither courts nor commentators are agreed upon proper solutions for the many variations on the vendor-vendee-insurer theme."
In an excellent note by William F. Young entitled "Some `Windfall Coverages' in Property and Liability Insurance," 60 Colum. L. Rev. 1063, 1071 (1960), the author feels that the Illinois court "understates the case" to say that neither the courts nor the commentators are agreed upon the proper solutions in this area.
It would appear that there are two broad lines of authority upon this question. What may be referred to as the "New York Rule" is derived from Foley v. Manufacturers' & Builders' Fire Ins. Co., 152 N.Y. 131, 46 N.E. 318, 43 L.R.A. 664 (Ct. of App. 1897) and a subsequent series of New York cases, especially Alexandra Restaurant, Inc. v. New Hampshire Ins. Co., 272 App. Div. 346, 71 N.Y.S.2d 515 (App. Div. 1947), affirmed 297 N.Y. 858, 79 N.E.2d 268 (Ct. of App. 1948). This rule is to the effect that in the absence of any contractual agreement to the contrary, a fire insurance policy is a contract of indemnification, the premiums for which are computed according to the value of the property and the risk involved without the knowledge *34 of collateral remedies, so that recovery on the policy will not be denied as long as the insured has a valuable insurable interest at the time of the casualty, even though there is an executory contract for the sale of the real property outstanding which is later consummated. A large majority of the courts in this country that have dealt with the question adhere to the New York Rule. Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85 (Sup. Ct. 1949); Vogel v. Northern Assurance Co., 219 F.2d 409 (3 Cir. 1955); First National Bank of Highland Park v. Boston Ins. Co., 17 Ill.2d 147, 160 N.E.2d 802 (Sup. Ct. 1959); Edlin v. Security Insurance Co., 269 F.2d 159 (7 Cir. 1959), certiorari denied 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 354 (1960); Board of Trustees, etc. v. Cream City Mutual Insurance Co., 255 Minn. 347, 96 N.W.2d 690 (Sup. Ct. 1959); Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala. App. 74, 66 So.2d 159 (Ct. of App. 1953), certiorari denied 259 Ala. 189, 66 So.2d 173 (Sup. Ct. 1953); Springfield Fire and Marine Ins. Co. v. Boswell, 167 So.2d 780 (Fla. District Ct. of App. 1964); Koppinger v. Implement Dealers Mutual Ins. Co., 122 N.W.2d 134 (N. Dak. Sup. Ct. 1963); Pink v. Smith, 281 Mich. 107, 274 N.W. 727 (Sup. Ct. 1937); Foster v. Equitable Mutual Fire Ins. Co., 2 Gray (68 Mass.) 216 (Sup. Jud. Ct. 1854). The contrary view, known as the "Wisconsin Rule" is an out-growth of Ramsdell v. Insurance Co. of North America, 197 Wis. 136, 221 N.W. 654 (Sup. Ct. 1928). This rule also regards a contract of fire insurance as a contract of indemnity but it denies recovery to the vendor-insured where the existence of a collateral executory contract for the sale of the real property eventually results in shielding the vendor from sustaining any actual pecuniary loss from the casualty. The Wisconsin Rule finds support in the following cases from other jurisdictions: Paramount Fire Ins. Co. v. Aetna Casualty & Surety Co., 163 Tex. 250, 353 S.W.2d 841 (Sup. Ct. 1962); Glens Falls Insurance Company v. Sterling, 219 Md. 217, *35 148 A.2d 453 (Ct. of App. 1959); Smith v. Jim Dandy Markets, 172 F.2d 616 (9 Cir. 1949). Several of the cases cited herein as authority for each of the abovementioned rules are discussed later in this opinion.
The topic has received judicial attention in one reported New Jersey case. Tauriello v. Aetna Insurance Co., 14 N.J. Super. 530 (Law Div. 1951) dealt squarely with the same factual situation now before this court. There is no relevant distinction. In holding for the defendant insurer on the theory that the plaintiffs had not been able to show any loss, the court in Tauriello in effect followed that line of cases referred to as the Wisconsin Rule, when it said:
"The general rule is that a contract for insurance against fire is ordinarily one of indemnity under which the insured is entitled to receive indemnity or to be reimbursed for any loss that he may have sustained and cannot recover if he has sustained no loss. See 45 C.J.S. Insurance § 915, page 1009, section 915. In Draper v. Delaware State Grange Mutual Fire Insurance Co., 5 Boyce 143, 28 Del. 143, 91 A. 206 [Super. Ct. 1914], it was pointed out that a fire insurance policy is a contract not to insure the property against fire but to insure the owner against loss by fire, and that the insurance company can be called upon when, and only when, the insured has sustained a loss which under the terms of the policy calls for indemnification. The same rule finds support in Patterson v. Durand Farmers Mutual Insurance Co., 303 Ill. App. 128, 24 N.E.2d 740 (1940)." (at p. 532)
The court goes on to state that the rationale of United Bond & Mortgage Co. of Hackensack v. Concordia Fire Ins. Co., 113 N.J.L. 28 (E. & A. 1934) and Power Building & Loan Association v. Ajax Fire Ins. Co., 110 N.J.L. 256 (E. & A. 1933), lends support to its decision.
Plaintiffs submit that in light of the persuasive appellate authority from other states before and after Tauriello, that holding is erroneous. Our system of jurisprudence envisions that while the opinions of courts of coordinate jurisdiction be taken into consideration, they are nevertheless not binding on a court of equivalent rank. State v. Patfol, Inc., 71 N.J. Super. 404, 408 (Cty. Ct. 1961), reversed on other grounds 76 N.J. Super 287 (App. Div. 1962), reargument *36 denied 76 N.J. Super. 572 (App. Div. 1962); Ferraro v. Ferro Trucking Co., 72 N.J. Super. 519 (Law Div. 1962); see also 20 Am. Jur.2d Courts, Sec. 194, p. 529 and § 201, p. 535.
An examination of the cases relied upon by the court in Tauriello leads this court to the conclusion that the question before it is deserving of fresh study. The two decisions of the New Jersey Court of Errors and Appeals referred to in Tauriello will be discussed later. Draper v. Delaware State Grange Mutual Insurance Co., 5 Boyce 143, 28 Del. 143, 91 A. 206 (Super. Ct. 1914) and Patterson v. Durand Farmers Mutual Insurance Co., 303 Ill. App. 128, 24 N.E.2d 740 (1940), are not decisions of state courts of last resort. They are readily distinguishable from the facts now under consideration and from the facts in Tauriello, which are interchangeable with the instant facts. In Draper and in Patterson, the defect was that the insured claimant did not hold legal title to the property at the time of its destruction by fire. In Patterson she did not even have title at the time the policy was issued, and therefore lacked any insurable interest. In the present case it is stipulated that plaintiffs held title as of the date of the fire and well thereafter. Any broad pronouncements on this problem in Patterson, moreover, can no longer be relied upon as authoritative. The case is apparently not the law in Illinois today. See First National Bank of Highland Park v. Boston Ins. Co., 17 Ill.2d 147, 160 N.E.2d 802 (Sup. Ct. 1959); American National Bank and Trust Co. of Chicago v. Reserve Ins. Co., 38 Ill. App.2d 315, 187 N.E.2d 343 (1962).
The difficulty with the opinion in Tauriello may lie in its stress on the term "indemnity". In talking about labels, Chief Justice Weintraub observed in Spina v. Consolidated Police, etc., Pension Fund Com., 41 N.J. 391 (1964) that:
"There is no profit in dealing in labels such as `gratuity,' `compensation,' `contract,' and `vested rights.' None fits precisely, and it would be a mistake to choose one and be driven by that choice to some inevitable consequence." (at p. 401)
*37 This is exactly what the court did in Tauriello. Instead of analyzing and determining just what interest of the insured was protected by the policy in force, it applied the label "indemnity" and was thus bound by what it considered to be the "general rule" for contracts of indemnity.
The concept is a nebulous one and simple solutions are not necessarily in order. As noted by Harnett and Thornton, "Insurable Interest in Property: A Socio-Economic Reevaluation of A Legal Concept," 48 Colum. L. Rev. 1162 (1948):
"the elusiveness of the indemnity principle carries with it an implied caveat that there can be little reliance on overly broad truths in an area where individual fact situations give the lie to broad generalizations." (at p. 1178)
Nothing illustrates this better than a comparison of two 1959 decisions of the Supreme Court of Minnesota. In Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co., 256 Minn. 404, 98 N.W.2d 280 (Sup. Ct. 1959), the court presents all the usual language about a fire insurance contract being a personal contract of indemnity with the insured rather than a contract in rem, and that there can be no recovery if there is no loss to the insured. But when the same court, just three months earlier, in the case of Board of Trustees, etc. v. Cream City Mutual Ins. Co., supra, deals with a fact situation much closer to that in the case at bar, it cites with approval (96 N.W.2d, at p. 696) the view that:
"the rights of an insurer and an insured are established as of the time of the fire, and those rights are not affected if the insured eventually is compensated for the loss from another source. The recovery of an insured will not be diminished because of the fact that he might have collateral contracts with third persons which operate to relieve the insured from the loss for which the insurer agreed to compensate him."
If the two Minnesota cases mean anything, it would seem to be that there is nothing inherent in the language of "indemnity" *38 that should commit a state, in all instances, only to a particular result.
The cases of United Bond & Mortgage Co. of Hackensack v. Concordia Fire Ins. Co., 113 N.J.L. 28 (E. & A. 1934) and Power Building & Loan Association v. Ajax Fire Ins. Co., 110 N.J.L. 256 (E. & A. 1933), cited by the court in Tauriello v. Aetna Insurance Co., 14 N.J. Super. 530, at p. 532 (Law Div. 1951), deal with a situation where the insured is a mortgagee who had insured his interest in the mortgaged premises. The test utilized by the two cases in determining whether the insured had suffered any loss is whether the debt represented by the mortgage was subsequently fully satisfied or not. Any analysis of this topic must also consider the opinion of our Supreme Court in Flint Frozen Foods, Inc. v. Firemen's Ins. Co. of Newark, N.J., 8 N.J. 606 (1952). In that case Einhorn's Inc., a creditor of the plaintiff, held warehouse receipts as collateral security upon a debt and obtained fire insurance which insured the creditor to the extent of its interest in groceries stored in a subsidiary of the plaintiff. A fire occurred which destroyed the goods covered by the warehouse receipts. Within a month after the fire the plaintiff-debtor had paid the debt in full. The insurance policy was assigned to plaintiff, which sued thereon notwithstanding that the assignor-creditor had never filed any claim under the policy. Plaintiff recovered below and the judgment was reversed on appeal. In holding that the plaintiff, as loss-claim assignee, could not recover because its assignor had suffered no loss, the Supreme Court made the following observations:
"A policy of fire insurance is a contract the terms of which are prescribed by statute, N.J.S.A. 17:36-5.7 [presently found in N.J.S.A. 17:36-5.20]. Like any contract, when its terms are clear the court must enforce the contract as it finds it, James v. Federal Insurance Co., 5 N.J. 21, 24 (1950). Its meaning `is to be governed by its own terms without recourse to other documents unless its own language so requires,' Herbert L. Farkas Co. v. New York Fire Ins. Co., 5 N.J. 604, 609 (1950). By the policy here in litigation the insurance company insured Einhorn's to the extent of its interest *39 against loss by fire with respect to groceries which Einhorn's held as collateral security for a debt owed it by the plaintiff. The debt having been paid in full by the plaintiff, it necessarily follows that Einhorn's suffered no loss. Therefore, neither Einhorn's nor the plaintiff as its assignee can recover on the policy which expressly provides that there shall be no recovery `in any event for more than the interest of the insured.' This conclusion, reached under the clear terms of the policy, is consonant with the fundamental principle of all insurance on property that the policy is a contract of indemnity. If the insured has suffered no loss with respect to the property covered by the policy, there is, of course, no liability on the policy, for there is nothing for the insurer to indemnify." (at p. 610)
Defendant argues that the above-mentioned authorities place New Jersey under what has been referred to as the Wisconsin Rule and that, pursuant to this rule, this court must look to related transactions to determine whether the insured plaintiffs have sustained a loss. The contention is that even if the plaintiffs had an insurable interest at the time of fire, the subsequent culmination of the sale of the insured property to the New Jersey Highway Department nearly five months after the fire for the same amount the plaintiffs had agreed to accept prior to the fire "wiped out" any loss; and in this State if there is no loss, there is nothing to indemnify. Plaintiffs maintain, on the other hand, that the New Jersey cases are distinguishable from the present set of facts because there it was the debt due the property owner that was insured while here, pursuant to the terms of the contract and N.J.S.A. 17:36-5.19, the property itself is insured. Furthermore, they insist that any collateral arrangements or outside agreements a vendor may have are of no concern to the insurance company and that to make the payment of claims which are ostensibly due dependent on extraneous matters does violence to the express terms of the insurance policy.
This court is, of course, bound by all pronouncements of the present or former high tribunal of New Jersey. A fair and proper reading of Flint Frozen Foods, Inc. v. Firemen's Ins. Co. of Newark, N.J., supra, and the earlier opinions of the Court of Errors and Appeals, cited previously, *40 can only mean that when the insured in a contract of fire insurance is a creditor, mortgagee, lienholder or the like who is insuring the obligation due to him, related transactions occurring subsequent to the fire can be taken into account in determining whether the insured has sustained a loss. The question before this court is whether the same rule obtains in non-creditor situations when the insured is simply an individual insuring himself against damage loss to property that he owns.
This court is aware of the seemingly broad import given the words "loss" and "indemnity" in Flint Frozen Foods, supra. But the court would also like to focus on p. 612 of the same opinion. There the Supreme Court, after stating that it is now entirely appropriate for a person having merely a security interest to take out a fire insurance policy in his own name covering property in which he has an interest, finds that recovery by the plaintiff (the debtor and assignee of the former assured)
"is precluded by the fact that the policy did not purport to insure its interest as owners of the property destroyed and because as assignee its claim could rise no higher than that of its assignor, Einhorn's, which suffered no loss." (Emphasis added).
The intimation is that had the policy therein purported to insure a full ownership interest in the property, as does the one now before this court, the result might well have been different.
In deciding the issue now before this court, a few other cases are deserving of mention. Federal Insurance Co. v. Engelhorn, 141 N.J. Eq. 349 (E. & A. 1948), involved theft or disappearance of a mink coat stored with a bailee. It was held that the defendant insured had failed to prove that the total sum she recovered from both the insurer and bailee did not exceed her loss and a judgment in favor of the plaintiff insurer for this excess over the loss was affirmed. In view of the fact that the Court believed that compensation received by insured from the bailee one week *41 after payment of her claim by the insurer was relevant in determining loss, the opinion may be said to lend some support, at least inferentially, to the notion that subsequent collateral events are to be considered in ascertaining existence of a loss. This was not a fire loss case involving realty, however, and other decisions may be closer in point.
The case of Feinbloom v. Camden Fire Ins. Co., 54 N.J. Super. 541 (App. Div. 1959), certification denied 30 N.J. 154 (1959), held that in the absence of a contrary provision in a fire policy, the rule is that if by reason of public regulations rebuilding is prohibited, the loss is total, even though some portion of the burned building remains which might otherwise have been available in rebuilding. And the Appellate Division added at p. 545 that in such a case where the loss is total because reconstruction or repair is impossible, the "maximum liability of the company then is the actual cash value of the property as of the time of the fire." (Emphasis added). For at least this type of situation, then, the Appellate Division considers the time of the fire and time of the loss to be synonymous.
In Trade Insurance Co. v. Barracliff, 45 N.J.L. 543 (E. & A. 1883), plaintiff sued successfully to recover on a policy of fire insurance covering buildings and stock upon a farm whose legal title was in his wife's name. The Court reasoned at p. 552 that plaintiff, who, with his wife and family, occupied and enjoyed the farm, had an insurable interest both at the time of making the insurance contract "and at the time of the loss", and it presumably meant "time of the fire" when it spoke of "time of the loss". Certainly there is nothing in the opinion that would indicate that the loss could not be or was not, in fact, calculated as of the time of the destruction by fire.
The Court continued (45 N.J.L., at p. 552) by stating that:
"this principle may be justly laid down that the amount to be recovered will depend, not on the loss happening to the individual *42 interest of the assured, but on the damage accruing to whatever interests are covered by the policy, so far as the assured represents those interests, * * *"
This "principle" would appear to be in line with the suggestion of the present Supreme Court in Flint Frozen Foods, supra, that the considerations are somewhat different when a full ownership interest is being insured against fire and when merely a creditor status is being protected. The rule of Trade Insurance Co. v. Barracliff, supra, as quoted herein, would seem to stand for the proposition that when an ownership interest is involved, actual damage to the insured property is a sufficient basis for recovery by one who is the de facto owner. Support for this distinction is found in the same opinion when the Court of Errors and Appeals quotes with approval (45 N.J.L., at p. 551) the following language taken from an Iowa decision:
"If the holder has an insurable interest, no inquiry is made as to the value of that interest, * * * to limit the obligation of the underwriters. The rule may be different in the case of mortgagees and lienholders." (Emphasis added).
When the underlying nature of the respective interests being insured by a creditor and by an owner are examined, it becomes completely logical and consistent that a different rule should prevail in each instance. A creditor is interested only in having the debt or obligation owing to him assured. He seeks to have his status as creditor protected. An owner, on the other hand, already holds what our law considers to be the most complete type of interest and he wishes to insure his physical property rather than his status. In short, if a piece of property held as security burns down, the "loss" is not yet a proven fact because the creditor may still be able to pursue successfully his underlying obligation; but if the same property held in outright ownership burns, the "loss" is then complete because the "owner" has nothing left to his ownership status except the ashes and rubble unless *43 he can collect insurance that will enable him to rebuild or purchase some new property to evidence his ownership.
Different treatment for the creditor and owner in this respect has been recognized elsewhere. One commentator presents the following view:
"The theory [that an insurance policy is a purely personal contract] should still be adhered to where specific interests are insured, as e.g., that of a mortgagee, a lien holder, a life tenant, etc. But where the policy purports to insure the `property,' there is good reason for saying that it insures all interests in the property whoever may own them." Goble, "The Moral Hazard Clauses of the Standard Fire Insurance Policy," 37 Colum. L. Rev. 410 (1937) at p. 428.
In Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala. App. 74, 66 So.2d 159 (Ct. of App. 1953), certiorari denied 259 Ala. 189, 66 So.2d 173 (Sup. Ct. 1953), the court dealt with a set of facts similar to those now before this court. There was an option contract to purchase which was carried out by the vendee with only a minimal reduction in the previously agreed price and, in fact, the deal was consummated on the very afternoon following the fire. The court, in holding that the insured vendor had sustained a loss entitling her to recover under the policy, rejected the insurer's contention that an earlier decision by the highest court of Alabama favorable to the insurance company was squarely in point by noting that in the earlier case the plaintiff was a mortgagee who foreclosed after the building had burned and purchased the property at the sale in full satisfaction of the mortgage debt. Continuing, the court said (66 So.2d, at p. 167):
"The mortgagee then sought to recover on the policy. The Supreme Court held that the purchase of the property for the full amount of the debt satisfied the mortgage and the mortgagee was not entitled to recover more.
Under facts of this type the mortgagee's insurable interest is the debt. Such interest diminishes as the debt is paid, and becomes nonexistent when the debt is paid in full."
*44 The views expressed herein with respect to the nature of the insured owner's interest and the determination of when he has sustained a loss by fire are thoroughly buttressed by an examination of the fire policy issued to the plaintiffs. The rights of the parties are controlled by this insurance contract. Power Building & Loan Association v. Ajax Fire Ins. Co., 110 N.J.L. 256, 257 (E. & A. 1933). And its meaning is to be governed by its own terms without recourse to other documents unless its language so requires. Herbert L. Farkas Co. v. New York Fire Ins. Co., 5 N.J. 604, 609 (1950).
In accordance with the mandate of N.J.S.A. 17:36-5.19, the present policy insures, but not "for more than the interest of the insured, against all direct loss by fire, * * * to the property described therein." (Emphasis added). Here, unlike in Flint Frozen Foods, Inc., supra, the policy does purport to insure an ownership interest in the property. It is undisputed that plaintiffs held full legal title to the insured premises on the date of the fire. Did they also sustain a "loss" as of that date? The statute and policy allow for a recovery up to the maximum coverage specified "to the extent of the actual cash value of the property at the time of loss." The "time of loss" can only intend the time of fire damage or destruction. If any other meaning were inferred, then the time for valuing the loss would be uncertain in every case. Defendant insurer offers this court no fixed standard for determining when a casualty loss is to be measured and argues only that here, after taking cognizance of collateral events not involving the insurer which came to be realized nearly five months after the fire, there was no loss. Nothing in New Jersey law commits this court to such a view for a non-creditor fire insurance situation. As indicated previously, Feinbloom v. Camden Fire Ins. Co., supra, and Trade Insurance Co. v. Barracliff, supra, are to the contrary and would treat the fire and loss dates as being one and the same thing. Accord, e.g., Alexandra Restaurant, Inc. v. New Hampshire Ins. Co., 272 App. Div. 346, *45 71 N.Y.S.2d 515 (App. Div. 1947), affirmed 297 N.Y. 858, 79 N.E.2d 268 (Ct. of App. 1948); Springfield Fire and Marine Ins. Co. v. Boswell, 167 So.2d 780 (Fla. District Ct. of App. 1964); Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala. App. 74, 66 So.2d 159 (Ct. of App. 1953), certiorari denied 259 Ala. 189, 66 So.2d 173 (Sup. Ct. 1953). In Citizens Ins. Co. of New Jersey v. Foxbilt, Inc., 226 F.2d 641, at p. 644, 53 A.L.R.2d 1376 (8 Cir. 1955), the federal court, applying Iowa law, said that the measure of damages in the event of loss is ordinarily the difference between the fair market value of the insured property immediately before the fire and its fair market value immediately thereafter, not exceeding the face amount of the policy or the cost of repair and replacement. This court similarly is of the view that the time of the fire is the common, usual and expected time for valuing "loss". It is axiomatic that the words used in an insurance policy will be construed in accordance with common usage. Jasion v. Preferred Accident Ins. Co., 113 N.J.L. 108 (E. & A. 1934); American Shops, Inc. v. Reliance Ins. Co. of Philadelphia, 26 N.J. Super. 145 (Cty. Ct. 1953).
To give any meaning other than "time of fire" to the words "time of loss", moreover, results in totally contradictory interpretations to the word "loss" in the several sections of this fire insurance policy. The insurance contract provides that:
"The insured shall give immediate written notice to this Company of any loss, * * * and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, * * *" (Emphasis added).
On the facts sub judice, the insurance company maintains that if we look at the closing date between insureds and their vendee, nearly five months after the date of the fire, it becomes apparent that the plaintiffs have ultimately sustained no "loss" within the intendment of the policy. If this is the time of determining "loss", then, consistently, the "immediate" *46 written notice to the Company of any loss and the sixty day requirement for filing a proof of loss only come into play as of the closing date. The defendant cannot have it both ways. A contract of insurance must be construed as a whole. Herbert L. Farkas Co. v. New York Fire Ins. Co., 5 N.J. 604, 610 (1950). While a party may plead inconsistent claims or defenses and may argue inconsistent principles of law, he cannot be heard to contend for two diametrically opposed sets of facts. Flint Frozen Foods, Inc., supra, at p. 611; In re Perrone's Estate, 5 N.J. 514, 527 (1950). Certainly the only conceivable day meant by the terms of the policy after which notice of any loss must be given and proof of loss filed is the day on which the casualty occurred. Consistency dictates that the "time of loss" for purposes of arriving at the "actual cash value of the property" also be taken as the date of fire.
One of the arguments presented by the courts adhering to the minority Wisconsin Rule is that an insurance contract is one of indemnity and to permit the assured to recover without taking into account collateral events would convert insurance into a wagering or profit-making device. See Glens Falls Ins. Co. v. Sterling, 219 Md. 217, 148 A.2d 453, 456 (Ct. of App. 1959). It is this court's belief that if the facts of a particular case so warrant, our courts can always deal adequately with a case involving fraud. See, e.g., Downs v. Jersey Central Power & Light Co., 117 N.J. Eq. 138 (E. & A. 1934). In holding that the plaintiff was entitled to the insurance proceeds and that the defendant insurer could not be subrogated to the plaintiff's rights in the matter, the Supreme Court of Minnesota dealt squarely with this contention of profit-making:
"In considering the asserted right of the insurer to subrogation to the collateral rights of the insured, certain conflicting considerations come into play. To permit the insured to keep the proceeds of both obligations offends public policy which frowns upon placing an insured in a position to profit by a loss which he may be tempted to cause himself or by carelessness fail to prevent. On the other *47 hand, to give the insurer the benefit of the collateral obligation through subrogation ignores the plain terms of the insuring agreement and provides the insurer with a windfall. Its premiums are assumed to represent the fair equivalent of the obligation it contracted to incur without knowledge of the existence of collateral remedies." Board of Trustees, etc. v. Cream City Mutual Ins. Co., 255 Minn. 347, 96 N.W.2d 690, 696 (Sup. Ct. 1959).
In a 6 to 3 decision by the Supreme Court of Texas, the majority of the court, in adopting the Wisconsin Rule, stated:
"We believe the better result to be that if a vendor is entitled to specific performance under a contract of sale and thereby collects the full purchase price despite fire damage to improvements, he has suffered no legal loss." Paramount Fire Ins., Co. v. Aetna Casualty & Surety Co., 163 Tex. 250, 353 S.W.2d 841, 845 (Sup. Ct. 1962). (Emphasis added).
It should be remembered that the contract to purchase here arose out of a proposed condemnation of the premises. Had there been a condemnation proceeding commenced, the State would have remained free at all times up until the closing to abandon the proceeding entirely (providing only that it pay any expenses incurred by the property owners). N.J.S.A. 20:1-30. In dealing with this precise problem in the light of a similar statute, the intermediate appeals court of Illinois said in American National Bank & Trust Co. of Chicago v. Reserve Ins. Co., 38 Ill. App.2d 315, 187 N.E.2d 343, 347 (1962):
"At that stage of the condemnation proceedings the City might have abandoned its petition altogether upon the payment of the property owners' expenses in the proceedings, as provided by statute (Ill. Rev. Stat. 1961, ch. 47, § 10 (a)). This being so, it seems clear to us that plaintiff did have an insurable interest in the property on the day of the fire. The fact that the city continued its proceedings against the property after the fire, rather than exercising its statutory prerogative to abandon them, is certainly a fortunate circumstance for the plaintiff, but it is not an event which defendant may seize upon in an effort to avoid liability on its contract of insurance." (Emphasis added). *48 Even if N.J.S.A. 20:1-30 were not applicable because of a negotiated contract, the State could have demanded an abatement of the purchase price, claiming at the time of closing of title, that it would not receive what it had bargained for.
The point was made in Tauriello v. Aetna Insurance Co., 14 N.J. Super. 530, at p. 532 (Law Div. 1951), that "a fire insurance policy is a contract not to insure the property against fire but to insure the owner against loss by fire." The highest court of Pennsylvania said the following in response to this assertion:
"This principle is correct but the appellants in order to sustain their position give it an erroneous interpretation. Of course, the policy does not `insure a property against fire'; it does not purport to usurp the functions of Providence. But it does insure the owner of the covered property against the loss caused by the igneous destruction of his property and that loss is measurable as soon as the destruction is complete. The loss the company contracts to remedy is the fire-created depletion of the insured's assets, and that is made up not by the erection of a duplicate of the building destroyed but by paying the insured its value in money. This liability the insuring companies cannot escape by anything any third parties may later do for the insured's benefit." Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85, 96, 8 A.L.R.2d 1393 (Sup. Ct. 1949). (Emphasis added).
Earlier in the same opinion, the court declared (63 A.2d, at p. 92):
"The destruction of a building by fire may conceivably bring many benefits to the owner and whatever these may be, the insurance company cannot participate in them."
This court submits that the fallacy of the so-called Wisconsin Rule is well illustrated by the following hypothetical example suggested in the dissenting opinion in Paramount Fire Ins. Co. v. Aetna Casualty & Surety Co., 163 Tex. 250, 353 S.W.2d 841, at p. 846 (Sup. Ct. 1962):
*49 "Suppose the vendor and purchaser had entered into a contract providing for $5,000.00 cash payment, the balance to be paid in monthly instalments of $125.00 each due on the 10th day of each successive succeeding month. This would require 82 months, or approximately seven years, to pay the deferred payments. Vendor could not be forced to take his balance in one lump sum. He could insist on the monthly payments as set out in the contract in order to earn the interest. Under the majority holding Paramount's liability would not be known until the last payment had been made."
In the instant case, the State did not take title until nearly five months following the fire. The delay might well have been even longer. Should the determination of an insured's loss in the vendor-vendee-insurer context be made to await the outcome of such matters? The insurer is not being damaged by being compelled to pay the insured who is owner as of the date of the fire. Its premiums are assumed to represent the fair equivalent of the obligation it contracted to incur without knowledge of the existence of collateral remedies. Board of Trustees, etc. v. Cream City Mutual Ins. Co., 255 Minn. 347, 96 N.W.2d 690, 696 (Sup. Ct. 1959). And the evil of the chance possibility of an ultimate collection by the vendor of the full purchase price from his vendee and also the insurance payment for the damage sustained does not outweigh the disruptions and harassments closely associated with delays in settlement of fire loss claims. Cf. Springfield Fire and Marine Ins. Co. v. Boswell, 167 So.2d 780, 785 (Fla. District Ct. of App. 1964).
In dealing with the problem at hand, some courts have recognized a theory of constructive trust whereby the vendor-insured can collect for the loss from the insurance company but only so as to hold the payment in trust for his vendee, who is owner of the property in equity under the doctrine of equitable conversion. Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85, 8 A.L.R.2d 1393 (Sup. Ct. 1949); and see Godfrey, "Some Limited-Interest Problems," 15 Law & Contemp. Prob. 415 (1950). The issue may perhaps turn on whether the contract of sale requires the vendee to obtain fire insurance. Raplee v. Piper, *50 3 N.Y.2d 179, 164 N.Y.S.2d 732, 143 N.E.2d 919, 64 A.L.R.2d 1397 (Ct. of App. 1957).
The doctrine of equitable conversion is in force in this State. Coolidge & Sickler, Inc. v. Regn, 7 N.J. 93, 98 (1951); Gallicchio v. Jarzia, 18 N.J. Super. 206 (Ch. Div. 1952). And in a suit for specific performance brought by a vendee against his vendor, the constructive trust theory has been applied so as to entitle the vendee to the proceeds of an insurance policy placed on the property by the vendor. See Millville Aerie, No. 1836, Fraternal Order of Eagles v. Weatherby, 82 N.J. Eq. 455 (Ch. 1913). But this court expresses no opinion as to the applicability of the theory when the suit, as here, is only between the vendor-insured and the insurer. The question of disposition of the insurance proceeds once they are in plaintiffs' hand is not now before the court. Cf. Aetna Casualty & Surety Co. v. Cameron Clay Products, Inc., 151 S.E.2d 305, 308 (W. Va. Sup. Ct. of App. 1966). The only point to be emphasized is that any equitable title in the vendee cannot be set up as a defense by the fire insurer in a suit brought against it on its contract with the vendor. Heidisch v. Globe & Republic Ins. Co. of America, 368 Pa. 602, 84 A.2d 566, 29 A.L.R.2d 884 (Sup. Ct. 1951); Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala. App. 74, 66 So.2d 159 (Ct. of App. 1953), certiorari denied 259 Ala. 189, 66 So.2d 173 (Sup. Ct. 1953).
It is concluded therefore that defendant's motion for summary judgment is denied. Plaintiffs' motion for partial summary judgment on specific legal issues is granted. The matter may proceed accordingly to trial of the remaining issues.
Plaintiffs are directed to submit an order in conformity with this opinion within ten days consented to as to form or settled upon notice.