119 N.J. Super. 248 (1972)
291 A.2d 24
CHRISTOPHER F. COOKE, SR., AND REBA COOKE, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
FIREMEN'S INSURANCE CO. OF NEWARK, N.J., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1972.
Decided May 17, 1972.
*249 Before Judges COLLESTER, MINTZ and LYNCH.
Mr. William B. McGuire argued the cause for appellant (Messrs. Lum, Biunno & Tompkins, attorneys; Mr. William F. Dowd, on the brief).
Mr. Norman Bruck argued the cause for respondents.
PER CURIAM.
Defendant appeals from a judgment entered in favor of plaintiffs on January 25, 1971 for $10,094.45. The judgment is comprised of the sum of $7,938, the stipulated amount of the fire loss involved, plus interest thereon at 6%.
The trial judge granted plaintiffs' motion for judgment at the close of all the evidence upon a finding that a contract *250 had been entered into between plaintiff Christopher F. Cooke, Sr., as purchaser, and the devisees and their respective spouses of the late Ella Rosenberg, as sellers, of a two-family dwelling in Newark.
The parties stipulated that defendant issued a fire insurance policy to plaintiff Christopher F. Cooke, Sr. for a three-year period commencing January 18, 1966, and that a fire loss occurred in the subject premises in the sum of $7,938, as earlier noted.
Louis Rosenberg was in the tailoring business. Cooke, who was in a similar business, agreed to make $1,000 worth of coats, for Louis Rosenberg in payment for his interest in the property. It also appears that shortly after the execution of the contract plaintiffs took possession, made repairs to the property, paid an outstanding water bill, all of which aggregated $753.70, and rented the premises to others. They also paid the first installment premium on the insurance policy of $36 out of a total of $93. At the time of the fire the policy of insurance in the face amount of $10,000 was in full force and effect.
There were certain title impediments, and apparently a caveat lodged against the probating of the will of Ella Rosenberg by a daughter, Pauline Feldstein. The will was ultimately admitted to probate, but the title problems had not yet been resolved on the date of the fire.
The insurance policy in question was issued pursuant to N.J.S.A. 17:36-5.19, which in part provides:
Every such fire insurance policy shall insure, limited to the amounts of insurance specified therein, the named insured and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property * * * nor in any event for more than the interest of the insured, against all direct loss by fire * * *. (Emphasis added).
Defendant argues that plaintiffs lacked legal title. Plaintiffs expended a maximum of $1,753.70 toward the purchase and repair of the premises. Defendant contends that *251 in these circumstances plaintiffs should not be permitted to recover the claimed loss of $7,938 but rather only their financial interest in the property, which at most amounted to $1,753.70. It asserts that a contract for insurance against fire is ordinarily one of indemnity, and as such entitles the insured only to his actual pecuniary loss.
Concededly, plaintiffs had an insurable interest in the property. In our judgment, the cited statutory language which we have emphasized apparently applies to cases in which the interest of the named insured is of a limited nature, such as a secured creditor, mortgagee, pledgee, or other security interest in the insured property which is terminated by the payment of the debt. Cf. Flint Frozen Foods, Inc. v. Firemen's Ins. Co. of N.J., 8 N.J. 606, 610 (1952), where recovery was denied on an assigned fire claim for goods held as collateral security after the creditor insured had been fully paid by his debtor. Since the debt had been paid, the court found no loss requiring indemnification. See also, Hyman v. Sun Ins. Co., 70 N.J. Super. 96 (App. Div. 1961).
Clearly, plaintiffs by virtue of the contract held equitable ownership of the property in addition to possession. Coolidge & Sickler, Inc. v. Regn, 7 N.J. 93, 98 (1951).
Neither counsels' nor our independent research has disclosed any decisional authority in this State construing the statutory limitation in N.J.S.A. 17:36-5.19, "nor in any event for more than the interest of the insured, against all direct loss by fire," in the context here presented.
In Wolf v. Home Ins. Co., 100 N.J. Super. 27 (Law Div. 1968), aff'd o.b. 103 N.J. Super. 357 (App. Div. 1968), the insured-owner prior to the time of the fire had agreed in lieu of condemnation proceedings to sell the insured property to the State. The property had been vacated and possession taken by the State. The sale was actually consummated nearly five months after the fire, with the insured receiving the full contract price previously agreed upon. Nevertheless, the court permitted recovery of the fire loss by the vendor on the theory that the "time of loss" must *252 mean the time of fire damage or destruction, and in the course of opinion stated (at 44): If any other meaning were inferred, then the time for valuing the loss would be uncertain in every case.
The court further stated:
The insurer is not being damaged by being compelled to pay the insured who is owner as of the date of the fire. Its premiums are assumed to represent the fair equivalent of the obligation it contracted to incur without knowledge of the existence of collateral remedies. Board of Trustees, etc. v. Cream City Mutual Ins. Co., 255 Minn. 347, 96 N.W.2d 690, 696 (Sup. Ct. 1959). And the evil of the chance possibility of an ultimate collection by the vendor of the full purchase price from his vendee and also the insurance payment for the damage sustained does not outweigh the disruptions and harassments closely associated with delays in settlement of fire loss claims. Cf. Springfield Fire and Marine Ins. Co. v. Boswell, 167 So.2d 780, 785 (Fla. District Ct. of App 1964). [at 49]
The instant case is distinguishable from Wolf in that here the insured is the purchaser under contract at the time of the fire. But the rationale of Wolf is equally apposite.
The concurring Appellate Division opinion by Judge Carton in Wolf (at 358-359) pointedly indicates that at the time the contract of sale was entered into, the insurance company would have issued an endorsement covering the purchaser's interest without the payment of any additional premium. So here, an endorsement would have issued upon request covering the interest of the vendors without the payment of any additional premium. He further stated:
In essence, this practice is a recognition by the insurer of at least a general obligation to make good the amount of any loss to someone in consideration of the premium with really no particular interest as to whom the amount of the fire loss should be payable. This standard practice would seem to accord with the normal expectations of the parties to such transactions.
Although a vendor is not obligated to insure, he may properly do so to the full value of the property, including both the legal and equitable estates which may arise in the event of a sale. Certainly plaintiff retained an insurance interest in the property after the execution of the contract, notwithstanding the operation of the doctrine of equitable conversion. *253 So here, the vendee may properly insure the full value of the property including legal interest of the vendors.
We further note, as in Wolf, that defendant never tendered a return of a portion of the premium to reflect plaintiffs' alleged limited interest in the property.
Our attention has been directed to Tauriello v. Aetna Insurance Co., 14 N.J. Super. 530, 532 (Law Div. 1951), where the point was made that a fire insurance policy is a contract not to insure the property against fire but to insure the owner against loss by fire. This principle of law is apparently challenged in Wolf, 100 N.J. Super. at 35, 36.
In Federowicz v. Potomac Ins. Co. of Dist. of Col., 7 App. Div.2d 330, 183 N.Y.S.2d 115 (App. Div. 1959), the court construed the same language with which we are here concerned. There, the insured leased land on a year-to-year-tenancy subject to termination by the landlord upon 30 days' written notice, in which event the insured tenant had the right to remove within five days the buildings placed on the land by him. The buildings were to become the property of the landlord if the tenant did not remove them within the stated period. The standard fire insurance policy issued to the tenant provided that the insurance company insured to the extent of the cash value of the property at the time of loss, but not exceeding repair or replacement cost "nor in any event for more than the interest of the insured." The court there indicated that the basic issue was whether the quoted language refers to the extent of the physical loss of the insured or his financial loss, and stated:
Absent a finding that his interest in the building had been extinguished the triers of the fact should not be permitted to speculate as to the extent of his financial loss by the remoteness or imminence of the termination of his insurable interest. Otherwise stated, the pertinent clause in the policy should be interpreted upon the basis that this was insurance against physical loss and not against financial loss. The contract was one of insurance against loss by fire to a building owned by plaintiff. It was not an agreement to indemnify him to the extent of his financial loss. [at 121]
*254 The facts in the matter before us present a stronger case for the insured than in Federowicz. Plaintiffs were not only the equitable owners of the building, but the land as well. The testimony does not indicate that the title impediments were insurmountable.
Subsequent to oral argument defendant referred us to Peerless Ins. Co., v. Bailey Mortgage Co., 345 F.2d 14 (5 Cir.1965). In that case the contract purchasers of a newly constructed dwelling went into possession and obtained from National Indemnity Co. an owner's fire insurance policy for $12,000. The contract price, including the lot, was $15,000. The purchasers had conveyed their equity in their former home to the builder-seller, receiving a credit of $6,700. The builder-seller had also obtained from Peerless Insurance Company a builder's risk policy in which the construction loan mortgagee Bailey was expressly covered. The stipulated fire damage amounted to $10,600. The District Court judgment in favor of Bailey against Peerless for $10,600 was affirmed. However, the court held that the contract purchasers' interest was not equivalent to the full value of the residence, and the judgment they obtained against National for $10,600 could not be sustained. Peerless is factually distinguishable in that the builder-seller was insolvent and had never acquired title to the lot, so that the contract purchasers "had little or no chance of ever obtaining the house under their contract for purchase. Their possession was apparently only that of tenants at sufferance." Id. at 17. Their judgment against National was reversed and the case remanded to the District Court to determine the value of their insurable interest, and to limit the recovery of the contract purchasers to an amount not to exceed the value of such insurable interest. Upon the remand the vendees' equitable interest was found to be $6,700, the credit they received for the value of their former home. This determination was affirmed in National Indemnity Co. v. Banks, 376 F.2d 533 (5 Cir.1967). In the instant case plaintiffs were the equitable owners in possession of a dwelling, with *255 actual legal title being in the sellers, and there was no evidence adduced to support a finding that plaintiffs had "little or no chance" of ever acquiring actual title. On the contrary, the trial court properly found that plaintiffs held a valid and enforceable contract.
Finally, defendant contends that under the contract of sale the risk of loss to the premises by fire was assumed by the sellers. However, since the sellers are not parties to this litigation, we need not determine whether a constructive trust should be applied so as to entitle the vendors to the proceeds of the fire insurance policy. The suit here is between the purchaser under contract and the insurance company. The question of the disposition of all or a portion of the insurance proceeds, once they are in plaintiffs' hands, is not before this court. Cf. Wolf v. Home Ins. Co., trial court opinion, 100 N.J. Super. at 50, and concurring Appellate Division opinion, 100 N.J. Super. at 359. In any event, the Wolf decisions hold that, assuming the applicability of the constructive trust theory, it is not open to defendant to assert the equitable ownership of another as a defense to a suit on the policy by the vendor. This rationale is likewise applicable to a suit by the equitable owner in possession against the insurance company that issued him a policy of fire insurance.
Although the risk of loss by fire until delivery of title was assumed by the sellers, such contractual provision does not preclude plaintiff Cooke from procuring a fire insurance policy to protect his interest in the property.
Affirmed.