12 N.J. Super. 396 (1951)
79 A.2d 739
FLINT FROZEN FOODS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, A BODY CORPORATE, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 27, 1951.
*397 Messrs. Parsons, Labrecque, Canzona & Combs (Mr. Theodore D. Parsons appearing), attorneys for plaintiff.
Messrs. Lum, Fairlie & Foster (Mr. Raymond W. Troy appearing), attorneys for defendant.
NAAME, J.C.C.
By consent of counsel, this case was tried before me without a jury. The facts may be briefly stated as follows: The plaintiff being indebted to Einhorn's, Inc., in the amount of $13,461.99, executed and delivered to it certain notes for that amount. Upon demand, the plaintiff delivered to Einhorn's, Inc., certain warehouse receipts as collateral security for the stated indebtedness. Einhorn's, Inc., also required evidence of insurance covering the merchandise represented by the warehouse receipts. The plaintiff assured Einhorn's, Inc., that it had a blanket policy, which among other things covered the merchandise represented by the certificates held by Einhorn's, Inc., and it had reported the same to its company, requesting its insurance company to forward a certificate of insurance to Einhorn's, Inc., covering the merchandise in question. Einhorn's, Inc., was not satisfied and ordered fire insurance covering the merchandise in question. Among the policies ordered by Einhorn's, Inc., was the policy issued by the defendant in the amount of $10,000 covering the merchandise located *398 in one of the plaintiff's warehouses, known as Baker's Basin in Trenton, New Jersey. This policy insured Einhorn's, Inc., as owner.
Under its blanket policy, the plaintiff among other things, was obliged to file a monthly report with its insurance company of the value of the merchandise in its several warehouses. Upon the issuance of this policy by the defendant, the plaintiff in its report to its company, reduced the value of the merchandise in the Baker's Basin warehouse to the extent of $10,000.
Thereafter on December 22, 1947, about 1 A.M., a fire broke out in the Baker's Basin warehouse, destroying considerable merchandise. A Mr. Flint, on behalf of the plaintiff, immediately went to the scene of the fire and from there called the defendant by telephone reporting the fire and asking the defendant to have the loss adjusted because the goods consisted of perishable food. In the meanwhile, the plaintiff had previously made arrangements to pay part of its obligation to Einhorn's, Inc., and sometime later on the same day and after the fire, the plaintiff made a payment of $5,593.88 to Einhorn's, Inc. In addition thereto, between the time of the issuance of the policy and the date of the fire, the plaintiff had also paid Einhorn's, Inc., an aggregate of $3,000 on its obligation. Thereafter Einhorn's, Inc., continued to press the plaintiff for payment of the balance due and the plaintiff thereupon arranged to pay off the balance and on January 15, 1948, paid Einhorn's, Inc., $5,400 and on January 22, 1948, the remaining balance was paid. The last payment included various items and the insurance premium paid by Einhorn's, Inc., on the policy issued by the defendant. The loss claim was assigned by Einhorn's, Inc., to the plaintiff in the following language:
"This policy including any loss claim is assigned to Flint Frozen Foods, Inc., without recourse and subject to charges arising in connection with loss claim."
and bears the date, January 15, 1948.
*399 Thereafter considerable discussions took place between the plaintiff and the defendant and on August 14, 1948, the plaintiff filed a proof of loss in the amount of $11,219.98 with the defendant and executed it, Flint Frozen Foods, Inc., assignee of Einhorn's, Inc. The defendant made an offer of settlement in the amount of $4,600 contingent on the defendant's right of subrogation to the same security held by Einhorn's, Inc., and the offer was rejected. Sometime in November, 1948, the defendant denied liability on the policy and the plaintiff filed this suit.
The issue is limited to the validity of the assignment of the loss claim in question. The defendant contends that the assignment in question is invalid, since the policy by its very terms provides "Assignment of this policy shall not be valid except with the written consent of this company." The defendant also contends it was entitled to the right of subrogation since its policy covered Einhorn's, Inc., as a mortgagee and that upon payment of the loss claim, Einhorn's, Inc., was obliged to transfer to it the security held by it and that it was deprived of this right of subrogation when the plaintiff paid off its obligation to Einhorn's, Inc. Einhorn's, Inc., returned the security, namely, the warehouse receipts to the plaintiff.
The policy in question on its face, insures Einhorn's, Inc. There is nothing in the policy that indicates that Einhorn's, Inc., was insured other than as owner of the merchandise in question. In addition, the policy provided that the mercantile risk protected was $10,000 on merchandise, materials and supplies of every description usual to the business of groceries. As a matter of fact, Einhorn's, Inc., was the owner of the merchandise in question because the warehouse receipts are considered as instruments of title and credit. Maritine Petroleum Corp. v. City of Jersey City, 1 N.J. 287 (1949). The legal title under the warehouse receipts was in the name of Einhorn's, Inc., and it could take and dispose of the goods at any time at its discretion. The most that the defendant would have been entitled to upon *400 payment of the loss claim in the amount of $10,000, was the right of salvage. If it had paid the loss to the plaintiff, it would have been entitled to salvage the goods remaining and recover what it could. However, it appears undisputed that the total loss exceeded the amount of the policy and apparently there was nothing to salvage nor did the defendant attempt to salvage any of the merchandise.
The policy in question clearly insures Einhorn's, Inc., for loss or damage to goods or merchandise to the extent of $10,000. It does not by any stretch of the imagination insure Einhorn's, Inc., as a mortgagee or pledgee, nor does it insure the payment of the debt owed by the plaintiff to Einhorn's, Inc.
The real issue in this case hinges upon the validity of the assignment of the loss claim. It is undisputed that the fire took place and the merchandise damaged or destroyed while the policy was in full force and effect and while plaintiff was still indebted to Einhorn's, Inc., in excess of $10,000. Upon payment of its debt, Einhorn's, Inc., executed the assignment of the loss claim as above set forth. This assignment is not in law an assignment of the policy but constitutes an assignment of the loss claim. In Combs v. Shrewsbury Mutual Fire Insurance Co., 32 N.J. Eq. 512 (Ch. 1880), the court held on page 515:
"The assignment to the complainant, after the loss occurred, is not within the provision of the policy declaring that the liability of the company shall cease in case of an assignment of the policy in whole or in part without the consent of the company. An assignment, after the loss has occurred, is not an assignment of the policy, but of the claim for the insurance, and is not within the inhibition of the clause just referred to. Philips on Ins. 108; May on Ins. 386."
This principal was reiterated in the case of Ocean Accident and Guarantee Corporation, Limited v. Southwestern Bell Telephone Co., 100 Fed.2d 441 (C.C.A. 8, 1939). At page 445, the court said:
"`The recognized reasons for the prohibition of assignments without the consent of the insurer had ceased. Its liability had become *401 fixed, and like any other chose in action was assignable regardless of the conditions of the policy in question. This is settled by the great weight of authority. Beach on Law of Insurance, vol. 2, par. 1114; May on Insurance, par. 386; Dogge v. Northwestern Nat. Ins. Co., 49 Wis. 501, 5 N.W. 889; Roger Williams Ins. Co. v. Carrington, 43 Mich. 252, 5 N.W. 303; Combs v. Shrewsbury Mut. Fire Co., 32 N.J. Eq. 512; Archer v. Merchants' & Mfgrs. Ins. Co., 43 Mo. 434; Nease v. Aetna Ins. Co., 32 W. Va. 283, 9 S.E. 233; Aultman v. McConnell (C.C.) 34 F. 724. In Wood on Fire Insurance, vol. 2, par. 361 the doctrine is stated thus: "Where the policy prohibits the assignment, an assignment without the insurer's consent invalidates it, but, in the absence of such a condition, the validity of the policy is not affected thereby, but still remains operative as to the assured; nor does an assignment after a loss has transpired invalidate it. In such case the insurer becomes absolutely a debtor to the assured for the amount of the actual loss, to the extent of the sum insured, and it may be transferred or assigned like any other debt. After a loss the delectus personae no longer becomes material, and even though the policy prohibits such an assignment, and provides that if so assigned the policy shall be void, it is held that such prohibition is void, as the insurer cannot restrict the assignment of a debt. The reasons that induce the restrictive clause have no existence or application after the risk has ceased."' 157 F. 516."
Since the loss claim in this case was assigned after the loss and since such an assignment under the weight of authority constitutes an assignment of the loss claim, it is a valid assignment. The defendant does not deny that the loss sustained amounted to $10,000 or that the claim was not properly filed in accordance with the terms and provisions of the policy. Its sole defense was to the effect that the assignment was invalid and that it was not liable under the policy by reason of the fact that it had been deprived of its right of subrogation. Having disposed of the two defenses and having found that the assignment is valid, I find that the plaintiff is entitled to recover the sum of $10,000 and judgment may be entered accordingly on behalf of the plaintiff and against the defendant.