SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### Givaudan Fragrances Corporation v. Aetna Casualty & Surety Company
(A-16/17/18/19/20/21/22/23/24/25-15) (076523)

**Argued November 9, 2016 -- Decided February 1, 2017**

**LaVecchia, J., writing for a unanimous Court.**

The Court is required to determine whether New Jersey adheres to the rule that an anti-assignment clause in an insurance policy may not bar the assignment of a post-loss claim even though the claim has not been reduced to a money judgment, a legal rule that an overwhelming number of jurisdictions around the country have accepted.

Plaintiff Givaudan Fragrances Corporation (Fragrances) faces liability as a result of environmental contamination from a manufacturing site that a related corporate entity operated in a facility in Clifton, New Jersey. The crux of this appeal involves Fragrances's effort to obtain insurance coverage for environmental claims brought by governmental entities in response to discharges of hazardous substances that occurred during the pertinent policy periods running through January 1, 1986. Fragrances claims that the defendant insurance companies (defendants) wrote liability policies for Givaudan Corporation during those relevant years. Fragrances argues that it is entitled now, either as an affiliate of Givaudan Corporation or by operation of an assignment of rights, to have the insurers provide it with coverage for that environmental liability.

Defendants claim that they insured Givaudan Corporation as their named insured, not Fragrances, and that any assignment to Fragrances is invalid because defendants did not consent to the assignment, as was required for a valid assignment according to the language of the insurance policies. Therefore, collectively, defendants refuse to honor Fragrances's right to bring insurance contract claims against them.

Fragrances's affiliate, Givaudan Roure Flavors Corporation (Flavors), is the corporate successor-in-interest to Givaudan Corporation, the named insurer under the policies. Both Fragrances and Flavors are owned by a corporate parent named Givaudan Flavors and Fragrances, Inc. Fragrances filed the instant complaint in February 2009 seeking a declaratory judgment that it was entitled to coverage under the policies. In February 2010, while the declaratory judgment action was pending, Fragrances notified defendants that Flavors planned to assign its post-loss rights under the insurance policies to Fragrances. Defendants refused to consent to the assignment. Nevertheless, Flavors executed the assignment to Fragrances.

Both sides moved for summary judgment. Because Fragrances was not acquired by Givaudan Corporation during the policy period, the court determined that it could not be an affiliated corporation covered under the policies. The court also determined that the assignment in this case was an assignment of policies, which cannot be assigned. The court denied Fragrances's motion and granted defendants' cross-motion for summary judgment.

The Appellate Division reversed and remanded. 442 N.J. Super. 28 (App. Div. 2015). The panel explained that, although the anti-assignment clauses in the occurrence policies at issue would prevent an insured from transferring a policy without the consent of the insurer, "once a loss occurs, an insured's claim under a policy may be assigned without the insurer's consent." Id. at 36.

The Court granted defendants' petition for certification. 223 N.J. 405 (2015).

**HELD**: The Court adopts the policy that, once an insured loss has occurred, an anti-assignment clause in an occurrence policy may not provide a basis for an insurer's declination of coverage based on the insured's assignment of the right to invoke policy coverage for that loss. The assignment at issue in this case was a post-loss claim assignment and therefore the rule voiding application of anti-assignment clauses to such assignments applies.

1.  Two New Jersey cases have grappled with whether post-loss insurance contract assignments are valid absent the consent of the insurer. In Flint Frozen Foods, Inc. v. Firemen's Insurance Co. of Newark, 12 N.J. Super. 396 (Law Div. 1951), rev'd on other grounds, 8 N.J. 606 (1952), the Law Division permitted a claim assignment after a loss had occurred. The trial court noted that the rule prohibiting assignments aims to prevent an insurer from bearing increased and unpredictable liability as a result of covering a new insured party but that, once the loss has occurred, the insurer's liability is fixed and the claim may be transferred like any other debt. The Court reversed the judgment but employed an analysis that did not contradict the Law Division's reasoning and conclusion that a post-loss claim may be assigned. (pp. 16-18)

2.  In Elat, Inc. v. Aetna Casualty & Surety Co., 280 N.J. Super. 62 (App. Div. 1995), the Appellate Division concluded that an anti-assignment condition in an insurance policy cannot restrict a policyholder's ability to assign a post-loss claim. The panel explained that "the purpose behind a no-assignment clause . . . is to protect the insurer from insuring a different risk than intended," but that "[a]ssignment of the right to collect" under a policy "only changes the identity of the entity enforcing the insurer's obligation to insure the same risk. Thus, the purpose behind the no-assignment clause is not inhibited by allowing claim, as opposed to policy, assignment." Elat, supra, 280 N.J. Super. at 67. The Elat panel also identified policy purposes that underlie the right to assign claims. (pp. 18-21)

3.  The reasoning of those cases aligns with the majority rule in the United States—that a provision that prohibits the assignment of an insurance policy, or that requires the insurer's consent to such an assignment, is void as applied to an assignment made after a loss covered by the policy has occurred. The principle underlying the rule is a deeply rooted public policy against allowing restraints on alienation of choses in action. New Jersey similarly recognizes choses in action as personal property and disfavors any attempt to restrict alienation of that property. (pp. 22-23)

4.  The rule also embodies a recognition that once a loss occurs, an assignment of the policyholder's rights regarding that loss in no way materially increases the risk to the insurer. This can be complicated when an attempted assignment transfers rights under a third-party liability policy. The issue of post-loss assignments in the third-party liability context was squarely addressed in Ocean Accident & Guar. Corp. Ltd. v. Sw. Bell Tel. Co., 100 F.2d 441, 445 (8th Cir.), cert. denied, 306 U.S. 658 (1939), which held that, under the employer's policy, "the liability, the loss and the cause of action arise simultaneously with the happening of the accidental injury to the employee." Id. at 446. The rule in Ocean Accident, voiding restrictions on assignment in liability policies after a third party's loss or injury has occurred regardless of when a claim is asserted against the insured, was quickly and nearly universally adopted by courts around the country. (pp. 24-32)

5.  The Court adopts the position first recognized in New Jersey in Flint Frozen Foods and Elat: An anti-assignment clause is not a barrier to the post-loss assignment of a claim. Post-loss assignments do not further the purpose of the anti-assignment clause, which is to protect the insurer from increased liability, because the insurer's risk cannot be increased by a change in the insured's identity. (pp. 32-34)

6.  In the case at hand, the assignment at issue was a post-loss claim assignment—not a post-loss policy assignment—and does not alter the insurers' liability for indemnifying the underlying insured event. The post-loss assignment of the environmental claims pertaining to the site should not be treated differently from the assignment of any other chose in action. As such, the consent-to-assignment condition, or anti-assignment provisions, in the insurers' policies may not be applied to bar the assignment here. (pp. 34-40)

7.  The Court is unpersuaded by the insurers' arguments that the duty to defend under the policies at issue cannot be assigned. Where a valid post-loss claim assignment is made as to a given claim, an insurer has a duty to defend the assignee as the holder of that claim. (pp. 40-41)

8.  In light of its analysis, the Court does not reach the affiliate issue. (pp. 41-42)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN did not participate.**

GIVAUDAN FRAGRANCES
CORPORATION,

    Plaintiff-Respondent,

        v.

AETNA CASUALTY & SURETY
COMPANY a/k/a TRAVELERS
CASUALTY AND SURETY COMPANY,
TRAVELERS CASUALTY AND SURETY
COMPANY f/k/a AETNA CASUALTY
& SURETY COMPANY, TRAVELERS
PROPERTY CASUALTY CORP. as
the successor-in-interest to
AETNA CASUALTY & SURETY
COMPANY AND TRAVELERS
CASUALTY AND SURETY COMPANY,
AMERICAN HOME ASSURANCE
COMPANY, THE CENTRAL NATIONAL
INSURANCE OF OMAHA, CENTURY
INDEMNITY COMPANY,
CONTINENTAL CASUALTY COMPANY,
THE CONTINENTAL INSURANCE
COMPANY in its own right and
as successor-in-interest to
BOSTON OLD COLONY INSURANCE
COMPANY, EVEREST REINSURANCE
COMPANY f/k/a PRUDENTIAL
REINSURANCE COMPANY, FEDERAL
INSURANCE COMPANY, HARTFORD
ACCIDENT & INDEMNITY COMPANY,
TIG INSURANCE COMPANY as
successor-in-interest to
INTERNATIONAL INSURANCE
COMPANY, LEXINGTON INSURANCE
COMPANY, MUNICH REINSURANCE
COMPANY f/k/a AMERICAN RE-
INSURANCE COMPANY, NATIONAL
SURETY CORPORATION,

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, and
ALLSTATE INSURANCE COMPANY as
successor-in-interest to
NORTHBROOK EXCESS AND SURPLUS
INSURANCE COMPANY f/k/a
NORTHBROOK INSURANCE COMPANY,

     Defendants-Appellants,

        and

HOME INSURANCE COMPANY,
MIDLAND INSURANCE COMPANY,
THE NEW JERSEY PROPERTY-
LIABILITY GUARANTY
ASSOCIATION on behalf of
MIDLAND COMPANY in
insolvency, MISSION INSURANCE
COMPANY, THE NEW JERSEY
PROPERTY-LIABILITY GUARANTY
ASSOCIATION on behalf of
MISSION INSURANCE COMPANY in
insolvency, and NEW JERSEY
MANUFACTURERS INSURANCE
COMPANY,

     Defendants.

       Argued November 9, 2016 – Decided February 1, 2017

       On certification to the Superior Court, Appellate Division, whose opinion is reported at 442 N.J. Super. 28 (App. Div. 2015).

       Patrick F. Hofer, a member of the Commonwealth of Virginia and District of Columbia bars, argued the cause for appellants Continental Insurance Company and Continental Casualty Company (Kinney Lisovicz, Reilly & Wolff, attorneys; Mr. Hofer and Timothy P. Smith, on the briefs).

Daren S. McNally argued the cause for appellant Travelers Casualty and Surety Company (Clyde & Co. U.S., attorneys; Mr. McNally, Barbara M. Almeida, and Meghan C. Goodwin, of counsel and on the briefs).

Tanya M. Mascarich argued the cause for appellant Allstate Insurance Company (Windels Marx Lane & Mittendorf, attorneys; Ms. Mascarich and Stefano V. Calogero, on the brief).

Stephen V. Gimigliano argued the cause for appellant Hartford Accident and Indemnity Company (Graham Curtin, attorneys).

John S. Favate argued the cause for appellant Everest Reinsurance Company (Hardin, Kundla, McKeon & Poletto, attorneys).

Gregory S. Thomas argued the cause for appellants American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, PA (LeClairRyan, attorneys; Mr. Thomas, Karol Corbin Walker, and Adam G. Husik, of counsel and on the briefs).

William E. McGrath, Jr., argued the cause for appellant Munich Reinsurance Company, Inc. (Smith Stratton, attorneys).

Seth Goodman Park submitted a letter in lieu of brief on behalf of appellants ACE Property & Casualty Insurance Company, Century Indemnity Company, TIG Insurance Company, and Federal Insurance Company (Siegal & Park, attorneys).

Jeffrey N. German submitted a letter in lieu of brief on behalf of appellant National Surety Corporation.

Robin L. Cohen argued the cause for respondent (McKool Smith, attorneys; Ms. Cohen and Kenneth H. Frenchman, a member of the New York bar, on the brief).

3

JUSTICE LaVECCHIA delivered the opinion of the Court.

This appeal requires us to settle whether this state adheres to the rule that an anti-assignment clause in an insurance policy may not bar the assignment of a post-loss claim even though the claim has not been reduced to a money judgment. An overwhelming number of jurisdictions around the country accept the legal rule voiding restrictions on post-loss claim assignments. The principle has been described as venerable and supportive of sound public policy. The Appellate Division adhered to that principle when rendering its judgment in this matter, relying on reasoning from previous trial and appellate decisions of this state.

We now affirm the Appellate Division's determination. We hold that, once an insured loss has occurred, an anti-assignment clause in an occurrence policy may not provide a basis for an insurer's declination of coverage based on the insured's assignment of the right to invoke policy coverage for that loss.

I.

Plaintiff Givaudan Fragrances Corporation (Fragrances) faces liability as a result of environmental contamination from a manufacturing site that a related corporate entity operated in a facility in Clifton, New Jersey, in relevant part, from the 1960s through 1990. The crux of this appeal involves

4

Fragrances's effort to obtain insurance coverage for environmental claims, initiated due to the actions of the New Jersey State Department of Environmental Protection (DEP) and, later, the United States Environmental Protection Agency (EPA), concerning discharges that occurred during the pertinent policy periods running through January 1, 1986.  Fragrances claims that the defendant insurance companies[1] wrote liability policies for Givaudan Corporation during the relevant years.  Fragrances argues that it is entitled now, either as an affiliate of Givaudan Corporation or by operation of an assignment of rights, to have the insurers provide it with coverage for that environmental liability.

Defendants are insurance companies that wrote primary, excess, or umbrella policies of insurance for Givaudan Corporation.  Defendants essentially claim that they insured Givaudan Corporation as their named insured, not Fragrances.  Defendants assert that any assignment to Fragrances is invalid because defendants did not consent to the assignment.  Defendants maintain that their consent was required for a valid assignment according to the language of the insurance policies.

---

[1]  The numerous defendants are referred to collectively as "defendants."  Generally stated, plaintiff's complaint seeks coverage for policy periods spanning from the 1960s through January 1, 1986.

They claim that the requirement that defendants consent to the assignment applies to the primary insurance policies and also applies, either expressly or derivatively from the underlying primary policy, in the case of the umbrella or excess policies. Therefore, collectively, defendants refuse to honor Fragrances's right to bring insurance contract claims against them. A summary of the pertinent mergers and corporate changes follows.

A.

Givaudan Corporation was the named insured under the policies at issue. Givaudan Corporation and its corporate predecessors were manufacturers of flavors, fragrances, and other chemicals. As is relevant in this matter, from the 1960s through the 1980s, the corporation purchased primary, excess, and umbrella coverage from the defendant insurers.

Givaudan Roure Corporation was formed in 1991 and became the successor in interest to Givaudan Corporation. Givaudan Roure Corporation, like its predecessor Givaudan Corporation, manufactured and sold fragrances and flavorings.

In 1997, "Givaudan Roure Fragrance Corporation" incorporated as a wholly owned subsidiary of Givaudan Roure Corporation. Effective January 1, 1998, Givaudan Roure Corporation transferred the assets and liabilities of the fragrances part of its business to Givaudan Roure Fragrance

Corporation.  That transfer excluded Givaudan Roure Corporation's insurance policies.

In 2000, plaintiff Givaudan Fragrances was incorporated; Givaudan Roure Fragrance was merged into Givaudan Fragrances. That merger was accomplished in a series of steps, which are not consequential for purposes of the legal issue at hand.[2]

The flavors aspect of the business also was restructured at that time and was merged into "Givaudan Roure Flavors Corporation" (Flavors).  As a result of that merger, Flavors became the corporate successor-in-interest to the named insured under the policies.

In sum, Givaudan Fragrances and Givaudan Flavors are now affiliated companies owned by a corporate parent named Givaudan Flavors and Fragrances, Inc.

B.

---

[2]  As Fragrances explains it, "in May, 2000, Plaintiff Givaudan Fragrances was incorporated, and the successor to Givaudan Roure Fragrance merged into Givaudan Fragrances."  A Certificate of Amendment to the Certificate of Incorporation, filed December 31, 1997, says that the name "Givaudan Roure Fragrance Corporation" would become "Givaudan Roure Corporation."

In the trial transcript, the court details more of the corporate history:  "[i]n 1991 Roure Corporation merged into Givaudan . . . . It ultimately[] became Givaudan Roure . . . -- in name that changed to Givaudan Flavors.  Then in 1997 you had an incorporation of Givaudan Roure Fragrance which took on the name change to Givaudan Roure.  Then in 2000 it merged with Givaudan Fragrance, and then became Givaudan Fragrance Corporation."

7

Fragrances alleges in this matter that "Defendants sold Givaudan and/or certain of its corporate predecessors or affiliates various standard form primary, umbrella and excess comprehensive general liability insurance policies." The named insured on the primary policies was "Givaudan Corporation and any subsidiary or affiliated companies which have or may now exist or hereafter be created." The umbrella policies included similar language naming Givaudan Corporation and its successors.

Fragrances maintains that it "falls within the policy definition of an insured under each of these Policies . . . because [Fragrances] is an affiliate of Givaudan Flavors, the successor by merger to the named insured, Givaudan Corporation." In the alternative, Fragrances asserts that it has the right via an assignment of rights to claim coverage under the policies. That right, Fragrances asserts, may not be defeated by a clause, common to the policies at issue, that makes any assignment subject to the insurer's consent (the "anti-assignment clause"). The language of that clause, as it appears in one representative policy, provides:

> Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall be adjudged bankrupt or insolvent, this policy shall cover the Named Insured's legal representative as Named Insured; provided that notice of cancellation addressed to the Insured named in the Declarations and mailed to the address shown

8

> in this policy shall be sufficient notice to
> effect cancellation of this policy.

The dispute between Fragrances and defendants began in earnest when Fragrances was sued on the environmental contamination claims.  In 2006, the DEP sued Fragrances for removal costs and damages that resulted from the discharge of hazardous substances at the Clifton site.  The DEP sought "reimbursement of the cleanup and removal costs and damages they have incurred, and will incur, as a result of discharge of hazardous substances at the Givaudan site located in the City of Clifton, Passaic County."[3]  In 2009, the DEP and the Administrator of the New Jersey Spill Compensation Fund also sued several corporations, including Occidental Chemical Corporation and Tierra Solutions, Inc., which were a part of the "Newark Bay Complex."  Tierra Solutions, Inc., filed a third-

---

[3]  There had been prior interaction between Givaudan Corporation and environmental regulators.  Groundwater extraction had been occurring at the site through 1987.  After the extraction ceased, Givaudan Roure entered into an Administrative Consent Order with the DEP, "pursuant to which Givaudan Roure was obligated to delineate the nature and extent of ground water contamination at the Givaudan Site."  The DEP also issued a "Notice of Civil Administrative Penalty Assessment for the improper analysis and storage of hazardous wastes at the Givaudan Property" in 1987.

In 2004, the EPA entered the picture, notifying Givaudan Fragrances that it may be responsible for environmental damages (specifically, cleanup of the Lower Passaic River) under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C.A. § 9607(a).

party contribution claim against Givaudan Fragrances Corporation for contamination from the Clifton site.

C.

Fragrances notified defendants of the environmental claims, but, generally stated, all defendants declined to provide coverage because Fragrances was not the named insured under the policies. Fragrances filed the instant complaint in February 2009 seeking a declaratory judgment that it was entitled to coverage under the policies.

In February 2010, while the declaratory judgment action was pending, Fragrances notified defendants that Flavors intended to assign its post-loss rights under the insurance policies to Fragrances. Defendants refused to consent to the assignment. Nevertheless, Flavors executed the assignment to Fragrances, which Fragrances maintains transferred its rights with respect to coverage for claims related to the fragrances operations that had been transferred pursuant to the 1998 restructuring.[4]

---

[4] The Assignment of Insurance Rights states, in relevant part:

> Givaudan Flavors Corporation ("Assignor") hereby sells, transfers, assigns, conveys, grants, sets over and delivers to Givaudan Fragrances Corporation ("Assignee"), all rights to insurance coverage under the insurance policies described on Schedule A hereto for all occurrences, accidents, events, loss, injuries, damages, and liabilities arising out of the conduct of the business of Assignor, Assignee or any affiliate or

10

After the assignment was executed, Fragrances filed a motion for summary judgment, asserting (1) that Fragrances has the rights of an insured under the policies because of the post-loss assignment of the claims or, alternatively, (2) that Fragrances is entitled to coverage under the policies as a corporate affiliate of Givaudan Flavors, which is the successor to the first named insured, Givaudan Corporation.

Defendants cross-moved for summary judgment, arguing that Flavors's rights were not assignable without defendants' consent because the claim had not been reduced to a judgment, and that Fragrances does not have policy rights as an affiliate.

The trial court decided the issues contrary to Fragrances's positions. First, the trial judge rejected Fragrances's argument that claimed policy rights as an affiliated corporation; the court determined that policies which "cover affiliated corporations, very clearly . . . can only apply to corporations acquired during the period of policy coverage." Because Fragrances was not acquired by Givaudan Corporation during the policy period, the court determined that it could not be an affiliated corporation covered under the policies.

---

predecessor of Assignor or Assignee prior to January 1, 1998, and relating to liabilities and/or assets transferred from Assignor to Assignee on or about January 1, 1998, including but not limited to any environmental liabilities (the "Insurance Rights").

11

Second, the court noted that decisional law in New Jersey recognizes that although a policy cannot be assigned, a particular claim can be assigned; however, the court found that principle inapplicable under the circumstances. Citing the assignment language here, the court determined that "[f]or all intents and purposes, it is assignment of policies." The court denied Fragrances's motion for summary judgment and granted defendants' cross-motion for summary judgment.

On appeal, Fragrances continued to maintain that the assignment was valid as a post-loss assignment of claims, not an assignment of a policy. Fragrances argued that the assignment, executed after the policies had expired, assigned claims under the policies and represented "no change in the risk" to the insurers. Fragrances also argued that, as an affiliate, it should have been covered under policies where Givaudan Corporation was the named insured.

Defendants countered that the 2010 assignment from Flavors to Fragrances was a policy assignment because it aimed to grant all rights under the policies to Fragrances. Defendants stated that insurance policies are personal contracts specific to the insured party that may not be assigned without the insurer's consent. Citing Flint Frozen Foods, Inc. v. Firemen's Insurance Co. of Newark, 8 N.J. 606, 611 (1952), defendants argued that "an insured cannot assign a policy to a third party, even after

12

a 'loss.'" And, according to defendants, a post-loss claim becomes assignable only when there has been a judgment against the insurer or a settlement between the insured and the insurer. Defendants argued further that the duty to defend can never be assigned. Finally, defendants asserted Fragrances is not qualified to be an insured affiliate of Givaudan Corporation.

The Appellate Division reversed and remanded. Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co., 442 N.J. Super. 28 (App. Div. 2015). The panel explained that the policies were occurrence policies, where "the peril insured is the occurrence itself." Id. at 36 (citing Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 310 (1985)). Although the anti-assignment clauses in the occurrence policies at issue would prevent an insured from transferring a policy without the consent of the insurer, "once a loss occurs, an insured's claim under a policy may be assigned without the insurer's consent." Ibid. (citing Flint Frozen Foods v. Firemen's Ins. Co. of Newark, 12 N.J. Super. 396, 399-400 (Law Div. 1951), rev'd on other grounds, 8 N.J. 606 (1952)). As explained by the Appellate Division, anti-assignment clauses aim to prevent the insurer from bearing an unanticipated risk, but once a loss has occurred there is no longer any danger that the risk will increase. Id. at 37-38. In light of its holding on the assignment-of-claim issue, the

13

panel declined to address defendants' remaining arguments.  Id.
at 40.

Defendants filed a petition for certification, which we
granted.  223 N.J. 405 (2015).

II.

Defendants argue that Fragrances has no right to claim
coverage under the insurance policies issued to Givaudan
Corporation because (1) Fragrances was neither the named insured
nor the corporate successor to the named insured, and (2) the
named insured could not validly assign its claim under the
insurance policy to Fragrances.

Defendants assert that Flavors's assignment was invalid as
it added a second insured to the policy, increasing their
liability.  More specifically, they contend that Flavors's
assignment was a proscribed policy assignment, not an allowable
transfer of a claim under the policy.  That is so because the
assignment did not transfer a claim to a post-judgment,
precisely defined amount of liability.  Moreover, defendants
contend that the assignment multiplied their risk because
defendants may have to provide a defense and indemnity to both
Flavors and Fragrances[5] -- and the latter is a party that
defendants did not agree to cover.

---

[5]  Several defendants point to an indemnification agreement
between Fragrances and Flavors, which provides:

14

Fragrances argues that Flavors validly made a claim assignment -- not a policy assignment -- to Fragrances. Fragrances contends that under an occurrence policy, once all potential losses have occurred, the insurance company's risk is fixed and the claim may be assigned just like any other chose in action.

Here, Fragrances maintains, any loss covered by the insurance policies that defendants issued necessarily occurred before the policies expired in 1986. After that time, defendants' risk was fixed. Fragrances also points to the fact that its corporate restructuring occurred years after the relevant policies expired, and years after any loss could have occurred. Thus, Fragrances contends that its corporate

> [Givaudan Roure Fragrance Corporation] shall indemnify and hold harmless [Givaudan Roure Corporation] and its directors, shareholders, officers, employees, agents, consultants, representatives, successors and assigns from and against any and all claims, liabilities, obligations, losses, deficiencies, damages, penalties, fines, costs, expenses and judgments of any kind or nature whatsoever (including reasonable attorney's fees) ("Losses") against [Givaudan Roure Corporation] arising, or alleged to arise, in connection with the Assumed Liabilities. The parties agree to fully cooperate with each other in deciding how to handle and defend any investigation, claim, lawsuit or other proceeding that is brought against [Givaudan Roure Corporation] relating to Assumed Liabilities.

15

reorganization should have no impact on defendants' potential liability.

Fragrances further contends that Flavors assigned defendants' duty to defend along with its other rights under the insurance policies. To that end, Fragrances argues that defendants' risks -- either under the duty to defend or in providing coverage -- have not multiplied because defendants still need to provide coverage only for one client, and only for a historical loss event attributable to the policy's original coverage undertaking. Fragrances stresses that the duty to cooperate under the insurance policies protects insurance companies from apprehension about working with a client with whom the insurers did not initially contract to cover.

### III.

We do not write on a blank slate in this area of law. There is substantial case law around the country on the subject at hand. Importantly, there are also two New Jersey cases that have grappled with whether post-loss insurance contract assignments are valid absent the consent of the insurer. We begin by crediting the prior decisions of this state that have addressed the issue we resolve today.

### A.

First, in Flint Frozen Foods, Inc. v. Firemen's Insurance Co. of Newark, 12 N.J. Super. 396 (Law Div. 1951), rev'd on

16

other grounds, 8 N.J. 606 (1952), the Law Division permitted a claim assignment after a loss had occurred. As security for a prior debt, Einhorn's, Inc. (Einhorn's) held an interest in Flint Frozen Food's (Flint) warehoused groceries. Id. at 399. Einhorn's obtained a fire insurance policy on the groceries to protect its interest. Id. at 397. When the warehoused goods caught fire, Flint immediately alerted Einhorn's and, on the same day as the loss, paid Einhorn's an amount that satisfied its prior debt obligation. Id. at 398.

Einhorn's then assigned to Flint its rights to make a claim under the insurance policy. Ibid. As the assignee of Einhorn's, Flint filed a claim with the defendant insurance company, Firemen's. Id. at 399. Firemen's denied liability to Flint, and Flint filed suit to obtain coverage. Ibid.

The Law Division held that Einhorn's assignment was valid because Einhorn's had assigned a post-loss claim, not a pre-loss policy. Id. at 400. The trial court explained that because a loss had occurred, "[t]he recognized reasons for the prohibition of assignments without the consent of the insurer had ceased." Ibid. (quoting Ocean Accident & Guar. Corp. Ltd. v. Sw. Bell Tel. Co., 100 F.2d 441, 445 (8th Cir.), cert. denied, 306 U.S. 658, 59 S. Ct. 775, 83 L. Ed. 1056 (1939)). The court noted that the rule prohibiting assignments aims to prevent an insurer from bearing increased and unpredictable liability as a result

17

of covering a new insured party. Id. at 400-01. However, once the loss has occurred, the insurer's liability is fixed and the claim may be transferred like any other debt. Ibid. The court issued a judgment in favor of Flint. Id. at 401.

On direct certification by this Court while the matter was pending unheard before the Appellate Division, the Court reversed the judgment but employed an analysis that did not contradict the Law Division's reasoning and conclusion that a post-loss claim may be assigned. The Court determined that Flint was precluded from recovering from the defendant insurer because Einhorn's had no interest to transfer. Flint Frozen Foods, supra, 8 N.J. at 612. Einhorn's loan had already been satisfied by Flint's payment on its debt owed, and therefore Einhorn's no longer had an interest in the damaged groceries to claim as a loss; as the Court summarized it, Flint's "claim could rise no higher than that of its assignor, Einhorn's, which suffered no loss." Ibid.

The second New Jersey case to address the subject at hand is Elat, Inc. v. Aetna Casualty & Surety Co., 280 N.J. Super. 62 (App. Div. 1995), which relied on Flint Frozen Foods and likewise concluded that a post-loss insurance policy claim may be assigned. Elat quotes Flint Frozen Foods and Ocean Accident for the proposition that once liability is fixed, a post-loss claim may be assigned "like any other chose in action . . .

18

regardless of the conditions of the policy in question." Elat, supra, 280 N.J. Super. at 66 (quoting Flint Frozen Foods, supra, 12 N.J. Super. at 401 (quoting Ocean Accident, supra, 100 F.2d at 445)). In Elat, the Appellate Division concluded that an anti-assignment condition in an insurance policy cannot restrict a policyholder's ability to assign a post-loss claim. Id. at 68.

Peter Vaida owned ELTM, a tool-manufacturing facility in High Bridge, New Jersey. Id. at 64. Elat, Inc. (Elat) acquired the assets of ELTM in 1983 and leased the site until 1985. Ibid. ELTM dissolved in 1986, and Vaida died in 1987. Ibid. The ELTM facility and its insurance policies became the property of Vaida's estate (the Estate) upon his death. Ibid.

A preliminary environmental-cleanup investigation revealed that ELTM had disposed of materials in a manner that resulted in soil and groundwater contamination. Id. at 64-65. That revelation led Elat to estimate that the cost to appropriately investigate and remediate the contamination would amount to between $2.5 and $3 million. Id. at 65.

Elat filed a complaint against ELTM, the Estate, and other entities seeking damages, contribution, and indemnification related to the costs of the cleanup. Ibid. The parties entered into a consent judgment; however, the Estate had a negative value and could not satisfy its part of the judgment. Ibid.

19

Elat and the Estate entered into an agreement under which the Estate assigned to Elat its rights against the defendant insurance companies.  Ibid.

When the defendants refused to honor the assignment to Elat, Elat filed a complaint to enforce its rights against the insurance companies.  Ibid.  The trial court granted the insurers' motion to dismiss on the basis that anti-assignment provisions in the insurance contracts prohibited the Estate from assigning its claims to Elat.  Ibid.

On appeal, the Appellate Division reversed.  Id. at 68. Writing for the panel, then-Judge Long concluded that anti-assignment provisions prevent assignment of a policy but not assignment of a post-loss claim.  Id. at 66.  As the panel explained, "[n]o-assignment [provisions within insurance policies] do not prevent the assignment after loss [because] . . . the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the assignment of a right to a money claim."  Id. at 67 (second alteration in original) (quoting 16 Couch on Insurance § 63.40 (rev. 2d ed. 1983)).  The reason for the distinction between a transfer of a contractual relationship and a transfer of a money claim is critical:

> [The distinction] is related to the purpose behind a no-assignment clause in a casualty or liability policy which is to protect the

insurer from insuring a different risk than intended. Assignment of the right to collect or to enforce the right to proceed under a casualty or liability policy does not alter, in any meaningful way, the obligations the insurer accepted under the policy. The assignment only changes the identity of the entity enforcing the insurer's obligation to insure the same risk. Thus, the purpose behind the no-assignment clause is not inhibited by allowing claim, as opposed to policy, assignment.

[Id. at 67.]

The panel also identified policy purposes that underlie the right of insured parties to assign claims, emphasizing that claim assignment "facilitates the compensation of injured parties." Id. at 67-68.[6]

The reasoning in Elat and in the trial court opinion in Flint Frozen Foods aligns with the overwhelming majority of jurisdictions that have, over the decades, spoken on the issue presented in the instant matter.

B.

---

[6] The panel noted that claim assignment can serve a "salutary purpose" when the "insured lacks either sufficient resources or the will to undertake coverage litigation." Elat, supra, 280 N.J. Super. at 67 (citation omitted). A claimant seeking recourse against a judgment-proof debtor, for example, may have only one avenue left -- the debtor's potentially valuable claim against his or her insurer. Ibid. Transferring the claim against the insurer to a party more willing and able to prosecute the action prevents insurance companies from avoiding honoring claims of less affluent or able policy holders. Ibid.

21

The majority rule in the United States is that a provision that prohibits the assignment of an insurance policy, or that requires the insurer's consent to such an assignment, is void as applied to an assignment made after a loss covered by the policy has occurred. Conrad Bros. v. John Deere Ins. Co., 640 N.W.2d 231, 237-38 (Iowa 2001); see also 3 Couch on Insurance § 35:8 (3d ed. 2016) (observing that "the great majority of courts" adhere to this rule). In Conrad Bros., supra, the Iowa Supreme Court explained the rationale underlying the majority rule:

> [O]nce the loss has triggered the liability provisions of the insurance policy, an assignment is no longer regarded as a transfer of the actual policy. Instead, it is a transfer of a chose in action under the policy. At this point, the insurer-insured relationship is more analogous to that of a debtor and creditor, with the policy serving as evidence of the amount of debt owed. Moreover, if we permitted an insurer to avoid its contractual obligations by prohibiting all post-loss assignments, we could be granting the insurer a windfall.
>
> [640 N.W.2d at 237-38 (emphasis added) (citations omitted); see also Ocean Accident, supra, 100 F.2d at 446 (quoting 2 May on Insurance § 386).]

The majority rule is an exception to the general principle that parties to a contract may freely limit assignment of their contractual rights. The principle underlying the rule is a deeply rooted public policy against allowing restraints on alienation of choses in action. See Bolz v. State Farm Mut.

22

Auto. Ins. Co., 52 P.3d 898, 904, 908 (Kan. 2002) (adopting majority rule and rejecting insurer's position "that the public policy in favor of freedom of contract is superior to the public policy in favor of free assignment of choses of action"); Wehr Constructors, Inc. v. Assurance Co. of Am., 384 S.W.3d 680, 688 (Ky. 2012) (finding majority rule "fully consistent with [Kentucky's] prior holdings adverse to contractual provisions tending to restrain the alienability of choses in action"). New Jersey similarly recognizes choses in action as personal property and disfavors any attempt to restrict alienation of that property. Morris v. Glaser, 106 N.J. Eq. 585, 610 (Ch. 1930) ("[A] chose in action has almost time out of mind been assignable."), aff'd, 110 N.J. Eq. 661 (E. & A. 1932); see also N.J.S.A. 1:1-2 (including choses in action in statutory definition of "personal property").

The rule also embodies a recognition that "once a loss occurs, an assignment of the policyholder's rights regarding that loss in no way materially increases the risk to the insurer." 17 Williston on Contracts § 49:126 (4th ed. 2016).

While application of the rule voiding restrictions on post-loss assignments is relatively straightforward in the context of first-party insurance (e.g., casualty or life insurance), it can become complicated when an attempted assignment transfers rights

23

under a third-party liability policy where the precise moment a loss occurred may be disputed.

In Fluor Corp. v. Superior Court, the California Supreme Court extensively addressed the early history and development of the law regarding third-party liability policies and identified the "key principle . . . that a liability insurer's inchoate obligation to indemnify the insured arises when personal injury or property damage results during the term of the policy, even though the dollar amount of the liability continues to be unascertained until later established." 354 P.3d 302, 322 (Cal. 2015). Fluor cited two early authorities to support this "key principle": American Casualty Insurance Co.'s Case, 34 A. 778 (Md. 1896), and Ross v. American Employers' Liability Insurance Co., 56 N.J. Eq. 41 (Ch. 1897). In Ross, supra, New Jersey's Court of Chancery explained the reasons for tying the insured loss to the moment of third-party injury:

> The recovery of the judgment against the insured by the injured party is not the injury against which the insurer insures him, but it is the liability for the consequences of the accident against which he is insured, and of which liability the judgment is a mere test or mode of proof. In fact, the recovery of the judgment is a mere mode by which the insured proves to the insurer that the intrinsic character of the accident was such that he was liable for the consequences of it. In this respect the judgment resembles the proof of loss to be furnished to an ordinary insurer against fire or shipwreck before action brought, or proof of death in case of life

24

insurance.  These are usually prerequisites to liability to action, but do not constitute the cause of action.  And in the case of a judgment against the party insured under one of these policies for damages for the result of an accident, the liability, though legally fixed at that time, relates back to the accident itself.  In contemplation of law the insured either was or was not, from the first, liable for the consequence of the accident; and the presumption is that the result of an investigation of the facts was never doubtful from the first, and always sure to result according to the actual fact.  So that the recovery of the judgment cannot be held or treated in the law as a contingency which may or may not happen, but a mere judicial ascertainment of the intrinsic character of the occurrence which determined the liability of the insured.

[56 N.J. Eq. at 44 (emphasis added).]

The reasoning in Ross echoes the opinion in American Casualty, supra, decided the previous year, in which the Maryland Supreme Court held that "the contingent liability of the insurer to reimburse the insured becomes . . . fixed . . . the moment an event happens which fastens a responsibility on the insured."  34 A. at 784.  Notably, the American Casualty court observed that "[the] contingency as to amount in no manner derogates from the fact that a liability for some amount has arisen."  Ibid.

Several decades after Ross and American Casualty, the issue of post-loss assignments in the third-party liability context was squarely addressed in Ocean Accident, supra, a case

25

involving assignment of an employer's liability policy claims following injury to its employees. 100 F.2d at 442-43. First, recognizing what by then had become a widespread rule, the Ocean Accident court held that, "under a liability policy such as the one under consideration, the liability, the loss and the cause of action arise simultaneously with the happening of the accidental injury to the employee." Id. at 446-47. The court rejected the insurers' argument that the consent-to-assignment clause should be enforced because the assignment was made before the claim was reduced to judgment:

> The principle on which the courts hold that an assignment of a right under a policy prohibiting assignment may be made is that such an assignment is not the assignment of the policy itself (because the parties have contracted otherwise), but it is the assignment of a claim, or debt, or chose in action. The rule is stated in 2 May on Insurance, § 386, as follows: "An assignment after loss is not the assignment of the policy, but the assignment of a claim or debt -- a chose in action. *** An assignment after loss does not violate the clause in the policy forbidding a transfer even if the clause reads before or after loss. The reason of the restriction is, that the company might be willing to write a risk for one person of known habits and character and not for another person of less integrity and prudence, but after loss this reason no longer exists."

> [Id. at 446.]

The rule in Ocean Accident, voiding restrictions on assignment in liability policies after a third party's loss or

26

injury has occurred regardless of when a claim is asserted against the insured, was quickly and nearly universally adopted by courts around the country.  See, e.g., In re Viking Pump, Inc., 148 A.3d 633, ___ (Del. 2016) (upholding assignment of claims related to asbestos exposure and rejecting argument that claims were not "fixed" or "measurable" at time of assignment because they had not been asserted against insured); Public Util. Dist. No. 1 v. Int'l Ins. Co., 881 P.2d 1020, 1027 (Wash. 1994) (enforcing assignments which were made "long after the activities giving rise to liability").[7]

The California Supreme Court's recent decision in Fluor, supra, adopting the majority rule on post-loss assignments, is particularly instructive because it extensively explores the current legal landscape on anti-assignment clauses and because it departs from that court's prior decision in Henkel Corp. v.

---

[7]  In Fluor, supra, the California Supreme Court discussed a number of recent cases applying the rule to post-loss assignments.  See 354 P.3d at 326-27 (identifying Gopher Oil Co. v. Am. Hardware Mut. Ins. Co., 588 N.W.2d 756, 763-64 (Minn. Ct. App. 1999); In re ACandS, Inc., 311 B.R. 36, 41 (Bankr. D. Del. 2004); Elliott v. Liberty Mut. Ins. Co., 434 F. Supp. 2d 483, 491 (N.D. Ohio 2006); Egger v. Gulf Ins. Co., 903 A.2d 1219, 1223, 1226-28 (Pa. 2006); Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co., 861 N.E.2d 121, 126, 129 (Ohio 2006); In re Ambassador Ins. Co., 965 A.2d 486, 490-91 (Vt. 2008); Viking Pump, Inc. v. Century Indem. Co., 2 A.3d 76, 107 (Del. Ch. 2009); Ill. Tool Works, Inc. v. Commerce & Indus. Ins. Co., 962 N.E.2d 1042, 1050, 1055 (Ill. App. Ct. 2011), appeal denied, 968 N.E.2d 81 (Ill. 2012); and Narruhn v. Alea London, Ltd., 745 S.E.2d 90, 94 (S.C. 2013)).

Hartford Accident & Indemnity Co., 62 P.3d 69 (Cal. 2003), which had been one of the few cases to explicitly reject the majority rule. In both Fluor and Henkel, the plaintiff corporation had been assigned the rights and liabilities of a predecessor corporation insured by Hartford Accident & Indemnity Company. See Fluor, supra, 354 P.3d at 304. The key issue in both cases was whether claims based on injuries that occurred during the policy period, but that had not been reduced to money judgments, were assignable without the insurer's consent.

In Henkel, supra, the court found in favor of the insurer, concluding that the anti-assignment clause was enforceable and that claims under the policy were not assignable until they had been reduced to a sum certain. 62 P.3d at 76. Although it acknowledged that courts had allowed the assignment of claims under an insurance policy, the court in Henkel determined that such an assignment should be upheld only

> (1) when at the time of the assignment the benefit has been reduced to a claim for money due or to become due, or (2) when at the time of the assignment the insurer has breached a duty to the insured, and the assignment is of a cause of action to recover damages for that breach.

> [Ibid.]

In Fluor, supra, the court expressly overruled Henkel's holding on anti-assignment clauses. 354 P.3d at 334. The Fluor court reached its decision after considering an obscure

28

California insurance code provision that had not been raised or addressed in Henkel. Id. at 303. That provision states that "[a]n agreement not to transfer the claim of the insured against the insurer after a loss has happened, is void if made before the loss." Cal. Ins. Code § 520. Based on a historical review of applicable insurance law concepts, the court concluded in Fluor that Section 520 applies to third-party liability insurance and that a "loss" under the statute refers to "a loss sustained by a third party that is covered by the insured's policy, and for which the insured may be liable." Fluor, supra, 354 P.3d at 330. Applying the statutory language, the court held that a liability insurance claim can be assigned without the insurer's consent as soon as the event triggering liability has occurred, regardless of whether there has been a money judgment or settlement with respect to the claim. Ibid.

While the Fluor court necessarily applied the California statute in reaching its result, it also thoroughly reviewed the development of common law principles applicable to liability insurance and discussed the validity of anti-assignment clauses in light of those principles. Fluor recognized that Henkel was not only inconsistent with the California statute but also with the "overwhelming majority" of precedent in other jurisdictions, which followed the rule of Ocean Accident. Id. at 326.

29

*Fluor* also observed that the *Ocean Accident* rule has been incorporated into several leading treatises, and that its influence has grown to the extent that

> [f]or many decades . . . courts, parties to transactions, and litigants generally assumed the legal propriety of assigning to a successor, in connection with a transfer of assets and liabilities, the right to invoke insurance coverage for losses that had previously occurred -- even if those losses were not determined with precision or indeed known, let alone reduced to a judgment.
>
> [*Ibid.*]

*Fluor* identified only one state that has rejected the majority rule of *Ocean Accident*. In *Travelers Casualty & Surety Co. v. United States Filter Corp.*, the Indiana Supreme Court declined to uphold a post-loss assignment under a liability insurance policy, finding that, for such an assignment to be valid, "the loss must be identifiable with some precision [and] must be fixed, not speculative." 895 *N.E.*2d 1172, 1180 (Ind. 2008). The Indiana Court agreed with *Henkel* that anti-assignment clauses should be enforced in the third-party liability context, though it acknowledged that several jurisdictions had reached the contrary result. *Id.* at 1179-80 (declining to follow *N. Ins. Co. of N.Y. v. Allied Mut. Ins. Co.*, 955 *F.*2d 1353 (9th Cir.), *cert. denied*, 505 *U.S.* 1221, 112 *S. Ct.* 3033, 120 *L. Ed.* 2d 903 (1992); *Egger v. Gulf Ins. Co.*, 903 *A.*2d 1219 (Pa. 2006); *Gopher Oil Co. v. Am. Hardware Mut.*

30

Ins. Co., 588 N.W.2d 756 (Minn. Ct. App. 1999)). Fluor noted, however, that in the years since Traveler's Casualty was decided, no out-of-state case has followed its holding that a "loss must be identifiable with some precision and must be fixed, not speculative." Fluor, supra, 354 P.3d at 327 & n.46 (internal quotation marks omitted).

Finally, we also note, as did the Fluor court in its decision, that there is a minority view that applies an entirely different approach to claim assignment. In its comprehensive review, Fluor identified a few cases from minority rule jurisdictions that, "employing an approach significantly different from Henkel, enforce consent-to-assignment clauses even more strictly than in that case, by failing to recognize any post-loss exception to those clauses (even, apparently, as to claims that have been reduced to a money judgment)." Id. at 327 n.46 (identifying Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co., 183 P.3d 734, 747 (Haw. 2007); Holloway v. Republic Indem. Co. of Am., 147 P.3d 329 (Or. 2006); In re Katrina Canal Breaches Litig., 63 So. 3d 955, 959 (La. 2011); and Keller Founds., Inc. v. Wausau Underwriters Ins. Co., 626 F.3d 871, 874–78 (5th Cir. 2010)). To the extent those cases stand for the principle that the rights of insurers to enforce anti-assignment clauses should be valued above the rights of the insured to freely assign their claims, they are inconsistent

31

with the established policy of New Jersey.  See Morris, supra, 106 N.J. Eq. at 610; see also N.J.S.A. 1:1-2.

IV.

A.

With respect to the core argument about the enforceability of insurance policy anti-assignment provisions concerning post-loss claims, we do not hesitate to adopt the position first recognized in this state in Flint Frozen Foods and Elat:  An anti-assignment clause is not a barrier to the post-loss assignment of a claim.  The better rule is the generally recognized majority rule on that issue.

Simply stated, that general rule recognizes that anti-assignment clauses in insurance contracts "apply only to assignments before loss, and do not prevent an assignment after loss."  3 Couch on Insurance § 35:8; see also 17 Williston on Contracts § 49:126 (4th ed. 2015) ("Policy provisions that require the company's consent for an assignment of rights are generally enforceable only before a loss occurs."); 5 Appleman Insurance Law & Practice § 3425 (2d ed. 2011) ("An insurer may not limit an insured's ability to assign his or her rights under a policy after the occurrence of an event which gives rise to the insurer's liability.").  Such clauses merely prohibit "the assignment of the policy, as distinguished from a claim arising under the policy."  3 Couch on Insurance § 35:8.  The

32

distinction is that "the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of the right to a money claim." Ibid. Thus, post-loss assignments do not further the purpose of the anti-assignment clause, which "is to protect the insurer from increased liability," because, after the "events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity." Ibid.; see Wehr Constructors, supra, 384 S.W.3d at 685 ("[T]he courts that have considered this issue have overwhelmingly concluded that once an insured occurrence has transpired, the insured's claim then ripens into a chose in action, a type of personal property, which, pursuant to fundamental principles of debtor-creditor relationships, may not, ordinarily, be restrained from alienability."); see also Ross, supra, 56 N.J. Eq. at 44 (explaining New Jersey's long-standing rationale for tying "loss" to moment of injury).

B.

Having adopted the majority rule, we turn now to its application to the case at hand. In doing so, we consider first whether Flavors's assignment to Fragrances was a post-loss claim assignment, or, as the insurers argue, an attempt to assign the insurance policies themselves. We conclude that it was a post-loss claim assignment and therefore that the rule we adopt today

33

voiding application of anti-assignment clauses to such assignments applies. In addition, we address the insurers' argument that the assignment was invalid because it unfairly multiplied the risks they agreed to bear, either by increasing their ultimate indemnity obligations or their duty to defend.

We begin by noting that the policies at issue are occurrence policies. They provide coverage based on liability for an occurrence to which the policy applies. See Zuckerman, supra, 100 N.J. at 311 (explaining that occurrence policies historically "insured against damage caused by collision, fire, war, and other identifiable events"). As such, the relevant event giving rise to coverage is the loss event, not the entry of a judgment fixing the amount of damage for that loss. See Ross, supra, 56 N.J. Eq. at 44 (explaining that insurer's liability "relates back" to accident or occurrence insured against); Ocean Accident, supra, 100 F.2d at 446 ("[U]nder a liability policy . . . the liability, the loss and the cause of action arise simultaneously with [the third-party injury].").

Here, the right to insurance coverage for the "occurrence" of environmental contamination was assigned to Fragrances after the policies had expired. The loss event occurred during the policy periods. The risk of exposure that was contractually undertaken by the insurer occurred prior to the assignment, and it occurred due to the actions or inactions of the entity that

34

the insurer insured when that loss event occurred.  See, e.g., Ill. Tool Works, Inc. v. Commerce & Indus. Ins. Co., 962 N.E.2d 1042, 1054 (Ill. App. Ct. 2011) ("The risks do not change or increase after the [policy] period expires or if an assignee rather than the named insured seeks coverage for losses."), appeal denied, 968 N.E.2d 81 (Ill. 2012); In re Ambassador Ins. Co., supra, 965 A.2d 486, 490-91 (Vt. 2008) (noting that insurer's risk was unaffected by post-loss assignment). Accordingly, we hold that this assignment after the insured-against occurrence took place and after the conclusion of the policy period is an assignment of a post-loss claim.

Nothing in the form of the assignment from Flavors to Fragrances alters the conclusion that only post-loss claims were assigned.  The Appellate Division appropriately rejected the insurers' argument that focused myopically on the wording of the assignment without considering that the policy periods had ended.  The insurers argued that the assignment provision's language is so broad as to constitute a transfer of the policy. The panel correctly pointed out that the rights under defendant insurers' policies were assigned after the policy periods expired.  Givaudan Fragrances Corp., supra, 442 N.J. Super. at 38.  In the circumstances of this matter involving lapsed policies, the assignment with respect to each is necessarily a claim assignment.  As the panel explained, because the loss-

35

claim rights were assigned after expiration of the policy periods, "the assignment of the rights to the policies . . . could not have increased the risk to any defendant insurer because all losses occurred before the assignment." Ibid.

We agree. The policy period applicable to each of the disputed policies had concluded at the time of the assignment from Flavors to Fragrances and, therefore, no new policy coverage for not-yet-occurred loss to the assignee was transferred. The latter would have been a transfer of policy requiring insurer consent, but that is not this case. Only rights to coverage for the already-occurred loss event were assigned in this case.

Defendants argue for an exception to the general rule allowing post-loss claim assignments because the claim at issue stems from an environmental contamination. We disagree. The fact that the environmental claim will require time to sort out liability and damages resulting therefrom does not alter our conclusion. Other claims involving losses that have occurred, but which cannot be determined with precision, do not alter the conclusion that the assignment must be honored. Anti-assignment clauses or similar consent-to-assignment provisions have been held over and over not to erect a barrier to assignment of post-loss claims that are not reduced to judgment. See, e.g., Gopher Oil, supra, 588 N.W. 2d at 763-64 (finding no expansion of risk

36

due to assignment of rights involving loss claim in environmental contamination case); Viking Pump, supra, 148 A.3d at ___ (holding excess policy insurance rights were validly assigned post-loss and insurers were responsible for liability for asbestos occurrences spanning multiple policy periods); Ill. Tool Works, supra, 962 N.E.2d at 1050 (enforcing post-loss assignment notwithstanding that extent of damages from injury resulting in loss may not be known at time of assignment); Egger, supra, 903 A.2d at 1227-28 (finding excess policy insurance rights assignable post-loss even when assignment was made prior to jury verdict because risk was triggered by injury, not money judgment). In sum, we hold, as did the Appellate Division, that the post-loss assignment involved herein was not a post-loss policy assignment.

Finally, we consider whether the insurers' risks were multiplied as a result of this post-loss assignment. As to the insurers' indemnification obligation, we are unpersuaded that replacement of Fragrances for Flavors as the insured to which coverage is now owed resulted in an increase in the contracted-for risk.

The environmental contamination occurrence -- and resultant loss -- took place during the relevant policy periods. The assignment does not alter the insurers' liability for indemnifying the underlying insured event. The loss event has

37

occurred.  It is no more, and no less, as a result of Flavors's assignment of its rights under the respective policies to Fragrances.  Fragrances now holds those rights.  The insured loss is one that is fixed.  Once transferred, that loss remains static -- a property right now held by the assignee, Fragrances.  The claim that must be honored by the insurers is defined by the policy applicable to each insurer for the occurrence that took place under the terms of each insurance policy while the policy was in effect.

Although several defendants assert that a separate indemnification agreement between Fragrances and Flavors causes an expansion of their policy indemnification obligation, we reject that argument.  The insurers' obligations under their policies have been assigned to Fragrances.  Only Fragrances holds those rights.  The insurance policy obligation is not expanded by any separate contractual agreement between Fragrances and Flavors.  The claim that the insurers must honor under the assignment of rights is not defined on the basis of the separate indemnification agreement between Flavors and Fragrances.  There is no doubling of risk as the insurers argue as a result of any indemnification agreement between Flavors and Fragrances.

In sum, we are unpersuaded that this assignment increases the risk undertaken by the insurers for the policy periods for

38

which they wrote coverage, in specified amounts, for occurrence-based claims pertaining to the Givaudan site in Clifton. Thus, the post-loss assignment of the environmental claims pertaining to the site should not be treated differently from the assignment of any other chose in action. As such, we hold that the consent-to-assignment condition, or anti-assignment provisions, in the insurers' respective policies may not be applied to bar the post-loss claim assignment here.

We are also unpersuaded by the insurers' arguments that the duty to defend under the policies at issue cannot be assigned and that, in attempting to assign the duty to defend, Flavors impermissibly multiplied the risk faced by the insurers.

It is true that the duty to defend is governed by "separate principles" from the duty to indemnify the insured: when a complaint is filed against an insured that might be covered by the policy language, evaluating the duty to defend requires "a comparison between the allegations set forth in the [complaint] and the language of the insurance policy." Flomerfelt v. Cardiello, 202 N.J. 432, 444 (2010). The duty to defend is specific to each claim made against the insured "irrespective of the claim's actual merit." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992). The assignment of claims to Fragrances, therefore, necessarily included assignment of the insurers' duty to defend those claims.

39

The assignment of claims did not result in an increased burden on the insurers, however, because in assigning the claims at issue to Fragrances, Flavors itself chose to forego its right to invoke the duty to defend.  Flavors did not purport to retain its interest as an insured with respect to the assigned claims, and there is no need to address the specter raised by the insurers that they might be faced with competing claims to a defense from both corporations.  Cf. Fluor, supra, 354 P.3d at 310 n.12 (addressing "ubiquitous potential for disputes over the existence and scope of [an] assignment" and potential for resultant "dual burden" on insurers (quoting Henkel, supra, 62 P.3d at 75)).  Where a valid post-loss claim assignment is made as to a given claim, an insurer has a duty to defend the assignee as the holder of that claim.  See Ill. Tool Works, supra, 962 N.E.2d at 1055-56 (finding "no merit" in insurers' argument that assignee of liability insurance claim may not assert duty to defend); N. Ins. Co., supra, 955 F.2d at 1358 (rejecting argument that "[s]ubstituting a different defendant may alter substantially defense costs").

In conclusion, we add only that, in light of the above analysis, we need not resolve the argument that Fragrances is a covered affiliate of Givaudan Corporation under the insurance policies at issue.  To the extent that those defendants that provided excess or umbrella policies to Givaudan Corporation

40

claim that the affiliate language in their policies is different from that used by the primary insurers, we need not address those differences, since we do not reach the affiliate issue.

V.

The judgment of the Appellate Division is affirmed.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.  JUSTICE ALBIN did not participate.

41